Linda SHEID, Petitioner,

v.

HEWLETT PACKARD, Liberty Mutual Insurance Company, and The Industrial Claim Appeals Office of the State of Colorado, Respondents.

No. 91CA0125.

Colorado Court of Appeals, Div. I.

Oct. 10, 1991.

Rehearing Denied Nov. 21, 1991.

Certiorari Denied March 16, 1992.

Steven U. Mullens, P.C., Steven U. Mullens, Colorado Springs, for petitioner.

Halaby & McCrea, Bruce B. McCrea, Lynda L. Simpson, Denver, for respondent Hewlett Packard.

The Law Office of John M. Connell, Curt Kriksciun, Denver, for respondent Liberty Mut. Ins. Co.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Michael P. Serruto, Asst. Atty. Gen., Denver, for respondent Indus. Claim Appeals Office.

Michael J. Steiner, Denver, for amicus curiae Colorado Compensation Ins. Authority.

Opinion by Judge MARQUEZ.

Linda Sheid, claimant, seeks review of an order of the Industrial Claim Appeals Panel dismissing her workers' compensation claim against the respondent employer, Hewlett Packard, and its insurer, Liberty Mutual Insurance Co. The sole issue on appeal is whether the Panel erred in dismissing the claim as a sanction for claimant's failure to comply with a discovery order. We affirm the dismissal.

This case has a protracted procedural history. In May 1988, claimant filed a claim for workers' compensation benefits for an alleged work-related mental disability. The matter was set for hearing on October 13, 1988.

In order to obtain copies of the claimant's medical and psychiatric records, the respondents provided medical release forms for claimant to sign. On the respondents' motion, the October hearing was continued because of the claimant's failure to sign the authorization forms.

Thereafter, the claimant signed qualified releases stating that if her physicians or health care providers believed that disclosure of the actual records "will or may be injurious" to her, that they not disclose those records, but instead, provide written narrative reports or responses to specific questions. The respondents filed an objection to the modification of the releases, but, nonetheless, forwarded the releases to claimant's mental health care providers in hopes of obtaining the requested records.

Claimant's in-patient hospitalization records were released; however, claimant's treating psychiatrist refused to release his records on grounds that claimant had directed him to provide only a narrative summary.

The matter was reset for hearing on March 14, 1989. In January 1989, respondents filed a motion to compel the claimant to sign an unqualified medical release form. Claimant did not object or otherwise respond to the motion to compel. The Administrative Law Judge (ALJ) issued an order dated February 3, 1989, requiring the claimant to sign the medical releases "without modification" within one week. The

order also required claimant's treating psychiatrist to provide claimant's records within ten days of his receipt of the release.

Neither the medical release forms nor the records were provided by the date of hearing, March 14, 1989. After conferring with attorneys for all parties, the ALJ vacated the hearing and ordered claimant's counsel to comply with the February 3, 1989, order.

The hearing was reset for June 6, 1989, but was again vacated because of claimant's refusal to comply with the ALJ's orders. The ALJ's order stated that the hearing would not be rescheduled until claimant had complied with the discovery orders.

A subsequent order, dated March 5, 1990, directed that the case would be dismissed if claimant did not provide the medical release within thirty days. The order provided that: "[I]f there are records which [claimant's physician] considers irrelevant to the case then those records will be reviewed by the Administrative Law Judge *in camera* and a decision will be made *whether or not to release these records to the Respondent–Insurer.*" (emphasis added)

The claimant once again submitted only qualified releases, and on April 17, 1990, the ALJ dismissed the claim with prejudice "for failure to prosecute," citing the statute now codified as § 8–43–207(1)(n), C.R.S. (1990 Cum.Supp.). On review, the Panel affirmed the order, noting, however, that the order of dismissal was in effect a discovery sanction pursuant to § 8–43–207(1)(e), C.R.S. (1990 Cum.Supp.) rather than a dismissal for failure to prosecute pursuant to § 8–43–207(1)(n).

On review, claimant contends the Panel erred in affirming the dismissal order. We disagree.

■■■ A patient's psychiatric records are protected by the physician-patient privilege. Section 13–90–107(1)(d), C.R.S. (1987 Repl.Vol. 6A). However, the law implies a waiver of the privilege if, as here, a patient-litigant has placed his or her mental condition at issue as the basis of a legal claim or affirmative defense. *Bond v. District Court*, 682 P.2d 33 (Colo.1984).

Here, the claimant alleged in her workers' compensation claim that she had suffered from "mental disability" since July 1986. She alleged that the disability was attributable to "tremendous pressure and stress on the job" which eventually caused "hospitalization for mental disability." These allegations directly implicate the claimant's mental health and constitute a waiver of the privilege.

Claimant, however, contends that her psychiatric records are not discoverable because they are not relevant under C.R.C.P. 26(b)(1). Alternatively, she argues that, because the release of her records was potentially injurious to her mental state, the ALJ was required to conduct an *in camera* hearing and balance the parties' competing interests before imposing a discovery sanction. We conclude that these contentions are without merit.

As recognized by our supreme court in *Bond v. District Court, supra,* a trial court has broad discretion under C.R.C.P. 26(c) to manage the discovery process and to protect a party from discovery requests that would cause annoyance, embarrassment, oppression, or undue hardship or expense. However, as pointed out in *Bond,* the burden is on the party seeking a protective order to show conditions warranting the entry of such an order.

Here, apart from the claimant's own assertions, there is nothing in the administrative record to show that the release of claimant's psychiatric records would be injurious to her mental health or would adversely affect her treatment. *Cf. Bond v. District Court, supra.* The ALJ nevertheless agreed in the order of March 5, 1990, to examine the claimant's psychiatric records *in camera* and determine which records, if any, should be released to the respondents. Of course, in order for the ALJ to review the records *in camera,* it was necessary for claimant to first sign an unqualified release authorizing her treating psychiatrist to release the records for inspection.

The ALJ's order explicitly stated that if claimant did not sign the release within 30

days, the claim would be dismissed. Moreover, as noted in our recitation of the procedural history above, the claimant had previously waived any objection to an unconditional waiver by failing to object to the respondents' initial motion to compel in January 1988.

The claimant refused to comply with the order of March 5, 1990, on the ground that the ALJ should make a relevancy determination *prior* to the release of her records. Claimant argued that the ALJ should conduct an *in camera* meeting with claimant's treating psychiatrist in which the psychiatrist would "identify areas in which he is not going to disclose information."

Because of the claimant's noncompliance, her psychiatric records were not included in the record for administrative or judicial review under § 8–43–301 and § 8–43–307, C.R.S. (1990 Cum.Supp.). Consequently, there is no evidentiary foundation to support claimant's contention that the records are either irrelevant to her claim or that a balancing of the parties' competing interests required a protective order under C.R.C.P. 26(c). *Cf. Bond v. District Court, supra.*

Accordingly, the record demonstrates a more than adequate basis for imposing a sanction on claimant, and the issue becomes whether dismissal of the claim was a permissible response to claimant's actions.

Section 8–43–207(1)(e) provides in pertinent part:

> "The director or administrative law judge may impose the sanctions provided in the rules of civil procedure in the district courts for willful failure to comply with permitted discovery."

The sanction of dismissal is authorized under C.R.C.P. 37(b)(2)(C).

A court is justified in imposing a sanction which terminates litigation at the discovery phase if a party's disobedience of discovery orders is intentional or deliberate or if the party's conduct manifests either a flagrant disregard of discovery obligations or constitutes a substantial deviation from reasonable care in complying with discovery obligations. *See Kwik Way Stores, Inc. v. Caldwell*, 745 P.2d 672 (Colo.1987).

The appellate standard of review governing sanctions under C.R.C.P. 37 is whether the tribunal that imposed the sanction abused its discretion. *Kwik Way Stores, Inc. v. Caldwell, supra.*

Here, the record reveals that three separate hearings on the merits were vacated and proceedings were deadlocked for some eighteen months by the claimant's refusal to sign an unconditional release. During this time, claimant refused to comply with three separate orders of the ALJ directing her to sign the requested release. The ALJ attempted to resolve the impasse by imposing the lesser sanction of staying proceedings until claimant complied with the discovery order. The claimant, however, disregarded this sanction and had the matter reset for a fourth hearing, which hearing also had to be vacated because of the claimant's continued noncompliance with the discovery order.

Here, notwithstanding the ALJ's willingness to inspect the records and issue a protective order, the claimant still refused to comply with the discovery order. Therefore, under the totality of the circumstances, we conclude that the imposition of the sanction of dismissal was not an abuse of discretion.

Order affirmed.

PIERCE and DAVIDSON, JJ., concur.