2015 COA 30

**Brian KILPATRICK, Petitioner,**

**v.**

**INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE of Colorado, Goodwill Industries of Denver, and Pinnacol Assurance, Respondents.**

**Court of Appeals No. 14CA1003**

Colorado Court of Appeals,
Div. I.

Announced March 12, 2015

Rehearing Denied July 30, 2015

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S. 2014.

Chris Forsyth Law Office, LLC, Christopher Forsyth, Denver, Colorado, for Petitioner.

Cynthia H. Coffman, Attorney General, Emmy A. Langley, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office.

Harvey D. Flewelling, Denver, Colorado, for Respondent Goodwill Industries of Denver and Pinnacol Assurance.

Opinion by JUDGE TAUBMAN

¶ 1 In this workers' compensation action, we reject the principal argument of claimant, Brian Kilpatrick, that his right to equal protection of the law was violated because district court judges must disclose their financial contributions, while workers' compensation prehearing administrative law judges (PALJs), and administrative law judges (ALJs) and members of the Industrial Claim Appeals Office (Panel) do not. Because we conclude that those ALJs and Panel members are required to disclose their financial contributions, we further conclude that claimant's right to equal protection was not abridged.

¶ 2 Claimant seeks review of a final order of the Panel affirming the decision of an ALJ that had denied his petition to reopen. The ALJ found neither a mistake of fact nor a change of condition meriting reopening. We conclude that substantial evidence supports the ALJ's reopening determination, reject

claimant's other arguments for setting aside the Panel's order, and therefore affirm.

## I. Background

¶ 3 Claimant sustained an admitted, compensable injury to his left wrist in June 2011, while pulling a pallet in the course and scope of his employment with employer, Goodwill Industries of Denver. An MRI taken in August 2011 revealed a tear of the ligaments and tissues in his wrist. Dr. Mitchell Fremling performed an endoscopic TFCC debridement and "distal ulnar shortening" surgery of the left wrist about two weeks after the tear was discovered.

¶ 4 Claimant continued to complain of pain in his wrist postsurgery. In December 2011, a different doctor, Dr. Jason Rovak, gave claimant a steroid and lidocaine injection in his wrist to ease his pain complaints. However, the wrist injection did not relieve claimant's symptoms. After the unsuccessful injection, Dr. Rovak noted that he did not have any further treatment options "to offer this patient" nor any interventions that he felt "confident will address his discomfort."

¶ 5 In March and April 2012, through Dr. Fremling and his authorized treating physician (ATP), Dr. David Yamamoto, claimant sought authorization for a second surgery to shorten the ulnar bone of his left wrist. Employer's insurer, Pinnacol Assurance, denied the request. Dr. Fremling then observed that he had nothing more "to offer this patient."

¶ 6 Soon after, Dr. Yamamoto placed claimant at maximum medical improvement (MMI) as of June 27, 2012, with a fifteen percent scheduled impairment of the left upper extremity. Dr. Yamamoto noted, "I am not in favor of further surgery as his failure to improve with the recent diagnostic injection coupled with his somewhat fragile psychological state and pain complaints make him in my opinion a poor surgical candidate."

¶ 7 Two other physicians, who were retained by employer, Dr. Jonathon Sollender and Dr. Brian Lambden, agreed that a second ulnar-shortening surgery was neither reasonable nor necessary and would not relieve claimant's symptoms. Indeed, Drs. Sol-

lender and Lambden opined that claimant did not present with a "positive ulnar" bone structure—in which the ulna is longer than the radius—and, consequently, ulnar shortening surgery would be of no benefit to him.

¶ 8 Employer filed a final admission of liability (FAL) based on Dr. Yamamoto's MMI determination and scheduled impairment rating of the left upper extremity. It is undisputed that claimant neither requested a division-sponsored independent medical examination (DIME) nor otherwise objected to the FAL. The FAL therefore became final and unappealable.

¶ 9 In late 2012 and early 2013, Dr. Yamamoto referred claimant to another physician, Dr. David Conyers, because claimant continued to complain of pain in his left wrist. Despite not finding "a structural abnormality ... to explain his continued symptoms," and X-rays showing "that the ulnar shortening [was] adequate ... [and that] claimant had "an ulnar neutral slightly ulnar negative" presentation, Dr. Conyers recommended further arthroscopy to examine the wrist. He therefore submitted a request for authorization for the procedure to employer's insurer, Pinnacol Assurance. Later, upon reviewing MRI films of claimant's left wrist, Dr. Conyers opined that, contrary to other physicians' interpretations, claimant was actually ulnar positive and would benefit from further ulnar shortening surgery. Pinnacol nevertheless denied the request.

¶ 10 Subsequently, in February 2013, Dr. Yamamoto signed a statement indicating he agreed with Dr. Conyers' surgery recommendation, and noted that claimant "should be off MMI." Several months later, in August 2013, Dr. Yamamoto signed a statement apparently intending to rescind his June 2012 MMI determination by checking a box next to the following statement drafted by claimant's counsel:

> In addition to my report of February 12, 2013, wherein I rescinded the MMI date of June 27, 2012, I would clarify that, in retrospect, I was mistaken to place [claimant] at MMI on that date. Based on subsequent reports by Dr. David Conyers, [claimant] needs further treatment before he reaches MMI. It was a mistake to place [claimant] at MMI on June 27, 2012, and I have rescinded that determination.

Based on these statements, as well as the report of Dr. Conyers, claimant petitioned to reopen his claim, arguing that Dr. Yamamoto erred by placing him at MMI in June 2012, and that his condition had changed.

¶ 11 As part of the ensuing litigation, claimant served employer with an interrogatory inquiring whether anyone working for or associated with Pinnacol or employer's counsel had given any gifts "of monetary value" to anyone working for the prehearing unit of the Division of Workers' Compensation, the Office of Administrative Courts, or the Panel. After employer declined to provide the information on the grounds that the request was overly burdensome and harassing, claimant moved to compel. He argued that because he could not obtain the information "automatically" through public financial disclosure, his discovery request was the "only way to obtain this information." However, claimant's discovery request was denied.

¶ 12 A hearing on claimant's reopening request later proceeded without the requested discovery. After listening to claimant's and Dr. Sollender's testimony, reading the transcripts of the depositions of Drs. Yamamoto, Lambden, and Conyers, and reviewing the documentary evidence submitted by the parties, the ALJ denied claimant's request to reopen. Relying on the opinions of Drs. Sollender and Lambden, the ALJ was not persuaded that either a mistake had been made or that claimant's condition had changed. She also found that Dr. Yamamoto's opinion was "equivocal" and concluded that he had not rescinded his MMI determination. Finally, she rejected Dr. Conyers' recommendation for additional surgery, concluding that his reliance on the MRI was inconsistent with the opinions of Drs. Sollender, Lambden, Rovak, and Fremling, who concurred that ulnar variance should be determined by X-ray, not MRI. The Panel affirmed the ALJ's denial and dismissal of claimant's petition to reopen.

¶ 13 Claimant now appeals. He raises a number of arguments on appeal, which can be summarized as follows: (1) he was entitled to discovery pertaining to any financial contributions Pinnacol or its employees made

to PALJs, ALJs, or Panel members; (2) the lack of financial information about PALJs, ALJs, and Panel members violates his right to equal protection under the law; (3) the ALJ was bound by Dr. Yamamoto's February and August 2013 notes stating that claimant was no longer at MMI; (4) substantial evidence does not support the ALJ's determination that Dr. Yamamoto did not rescind his June 2012 MMI determination; and (5) the ALJ made numerous evidentiary errors requiring reversal and remand, including (a) denying his request for sanctions for employer's alleged failure to disclose MRI films; (b) considering other physicians' MMI opinions even though the ALJ was bound by Dr. Yamamoto's February and August 2013 notes apparently rescinding MMI; (c) permitting employer's counsel to question employer's expert about an opinion that allegedly was not disclosed; (d) imposing an impossible burden on claimant's counsel by inquiring what documents he claimed had not been disclosed; and (e) denying his request to call employer's counsel as a witness even though she "repeatedly testified" during the hearing and in deposition.

## II. Preservation of Claimant's Arguments

¶ 14 We first address employer's contention that numerous arguments asserted here by claimant were not preserved for our review. Employer argues that claimant failed to object to certain evidence, failed to make offers of proof, and failed to seek review of the denial of his motion to compel before either the ALJ or the Panel, all of which constituted waiver of these arguments on appeal. However, our review of the record reveals that claimant repeatedly objected to testimony and evidence, and discussed his positions at length with the ALJ. In general, an objection adequately preserves an issue for appellate review "so long as it calls the court's attention to the specific point it addresses." *See Vaccaro v. Am. Family Ins. Grp.*, 2012 COA 9, ¶ 52, 275 P.3d 750. We note, too, that claimant challenged the denial of his motion to compel in his brief in support of his petition to review before the Panel.

¶ 15 Nor are we persuaded that the PALJ's decision had to be reviewed by the ALJ to preserve the issue for appellate review. We know of no such rule. To the contrary, "rulings of a PALJ are binding on the parties. No provision stays interlocutory orders entered by a PALJ pending review by an ALJ." *Kennedy v. Indus. Claim Appeals Office*, 100 P.3d 949, 950 (Colo. App. 2004). While it is true that a PALJ's order "*may* be addressed at the subsequent hearing," and that an ALJ has authority to override a PALJ's ruling, the statute authorizing PALJs to decide certain issues does not make ALJ review a prerequisite for appellate review. *Indus. Claim Appeals Office v. Orth*, 965 P.2d 1246, 1254 (Colo. 1998) (emphasis added); *Dee Enters. v. Indus. Claim Appeals Office*, 89 P.3d 430, 441 (Colo. App. 2003); § 8–43–207.5, C.R.S. 2014. The only authority cited by employer that explicitly supports its position is a Panel decision. *See Quinn v. Tire Centers, LLC*, (W.C. No. 4–712–600, Oct. 9, 2007). However, we are "not bound by the Panel's decisions in other workers' compensation cases." *Olivas–Soto v. Indus. Claim Appeals Office*, 143 P.3d 1178, 1180 (Colo. App. 2006). Consequently, we will address claimant's arguments.

## III. Disclosure of Financial Ties Between Pinnacol, ALJs and Panel Members

¶ 16 Claimant first alleges errors and abuses of discretion by the ALJ for denying his discovery request pertaining to Pinnacol's financial disclosures. He argues that workers' compensation litigants are treated inequitably as compared to litigants in district court because workers' compensation litigants do not have access to PALJs', ALJs', and Panel members' financial disclosures. We are not persuaded that any error occurred that violated claimant's right to equal protection.

### A. Facts Pertaining to Financial Disclosures

¶ 17 Claimant posed the following interrogatory to employer:

Please detail anything of monetary value that has been provided by Pinnacol Assurance or Ruegsegger, Simons, Smith & Stern, or any board member, partner or shareholder thereof, to any employee, staff or member of the Prehearing Unit of the Division of Workers' Compensation, Office of Administrative Courts or the Industrial

Claim Appeals Office within the last five years, including, but not limited to, gift cards, trips, checks, gifts, etc.

Employer objected to this interrogatory on the ground that it was overly broad, ambiguous, irrelevant, and harassing. Claimant moved to compel the requested discovery. A PALJ agreed with employer that the request was not relevant and was "over-burdensome." He therefore denied claimant's motion to compel.

### B. No Abuse of Discretion to Deny Discovery

¶ 18 An ALJ is justified in using his or her discretion in the discovery process "to protect a party from discovery requests that would cause annoyance, embarrassment, oppression, or undue hardship or expense." *Sheid v. Hewlett Packard,* 826 P.2d 396, 398 (Colo. App. 1991). An ALJ abuses his or her discretion only if the evidentiary ruling "exceeds the bounds of reason." *Coates, Reid & Waldron v. Vigil,* 856 P.2d 850, 856 (Colo. 1993) (quoting *Rosenberg v. Bd. of Educ. of Sch. Dist. # 1,* 710 P.2d 1095, 1098–99 (Colo. 1985)).

¶ 19 Claimant argues that employer should have been required to produce records of any financial ties between Pinnacol and its employees and the ALJs or other employees of the division of workers' compensation because "the questions were reasonably calculated to lead to the discovery of admissible evidence." Citing *Belle Bonfils Memorial Blood Center v. District Court,* 763 P.2d 1003, 1013 (Colo. 1988), claimant argues that the ALJ misapplied the standard by failing to weigh the competing interests of his right to know if ALJs and Panel members are receiving any funds from Pinnacol, its employees, or its attorneys against employer's and Pinnacol's right to be free from harassing and burdensome discovery requests. However, claimant's reliance is misplaced.

¶ 20 The PALJ in this case held a hearing at which the parties articulated reasons for and against production. He therefore heard and weighed these factors before denying claimant's discovery request. Moreover, unlike the plaintiffs in *Belle Bonfils,* who could not prosecute their claims without reviewing the requested documents, claimant here has not demonstrated that his case hinges on information these requested financial records may reveal. To the contrary, the disclosure of the financial records of hundreds of Pinnacol employees has no direct bearing on claimant's request to reopen his claim. Indeed, claimant made no offer of proof to the PALJ, the ALJ, or to us that the interrogatory was reasonably calculated to lead to the discovery of admissible evidence. Nor did he offer to narrow his request to the PALJ and ALJ in his case. While such evidence could be relevant if there were a basis to believe that an ALJ in this case accepted potentially inappropriate gifts, claimant has made no such showing and has not demonstrated any basis for believing that such gifts were made.

¶ 21 Claimant also fails to articulate how the PALJ's ruling "exceeded the bounds of reason." *See Coates, Reid & Waldron,* 856 P.2d at 856. Nor does he explain why imposing the proposed document production and interrogatory response requirement on employer is outweighed by the mere possibility of discovering an inappropriate financial tie. *See Sheid,* 826 P.2d at 398. Absent a showing that the discovery request would lead to the production of admissible evidence, the ALJ properly concluded that the request was overly broad. Therefore, we cannot say that the PALJ abused his discretion in denying claimant's request. *See id.*

### C. No Equal Protection Violation for Denial of Request to Produce Financial Records

¶ 22 Claimant next contends that the denial of his request for Pinnacol's financial records violated his right to equal protection under the law. In particular, he argues that workers' compensation litigants are unfairly hampered in their pursuit of claims because, unlike litigants pursuing actions in district courts, workers' compensation litigants do not have access to PALJs', ALJs' or Panel members' financial disclosures. Litigants pursuing actions in "courts of record" can obtain from the secretary of state a "written disclosure" of the income, capital gains, financial interests, property interests, and business associations, among other information, of "each justice or judge of a court of

record." § 24–6–202(1), (2), C.R.S. 2014. Claimant argues that there is no comparable disclosure mandate applied to PALJs, ALJs and Panel members, and that this disparity violates his Fourteenth Amendment guarantee of equal protection under the law.

¶ 23 Employer argues that an executive order issued in 2001 and discussed in *Youngs v. Industrial Claim Appeals Office*, 2012 COA 85M, ¶ 62, 297 P.3d 964, imposed a duty on "all administrative law judges [to] adhere to the Colorado Code of Judicial Conduct." Executive Order No. D 008 01, Strengthening Colorado's Administrative Justice System (May 29, 2001).

¶ 24 Colorado Code of Judicial Conduct (C.J.C.) Rule 3.15 provides that:

(A) A judge shall publicly report the source and amount or value of:

(1) compensation received for extrajudicial activities as permitted by Rule 3.12;

(2) gifts and other things of value as permitted by Rule 3.13(C), unless the value of such items does not exceed the statutory amount specified in Title 24, Article VI of the Colorado Revised Statutes; and

(3) reimbursement of expenses and waiver of fees or charges permitted by Rule 3.14(A).

Thus, employer argued that the executive order subjects all ALJs and Panel members to the financial reporting requirements outlined in the C.J.C. Employer contends that, contrary to the assumption underlying claimant's position, workers' compensation claimants should have access to the same financial disclosure information as is available to civil litigants in courts of record. Accordingly, employer reasons, claimant cannot establish any equal protection violation.

¶ 25 We granted claimant's request for supplemental briefing on this issue. Based on our review of the parties' and the Panel's supplemental briefs on this issue, we agree with employer and the Panel that section 24–6–202 does not violate the Equal Protection Clause.

### 1. Governing Law

¶ 26 "The threshold question in an equal protection challenge is whether the legislation results in dissimilar treatment of similarly situated individuals." *Pepper v. Indus. Claim Appeals Office*, 131 P.3d 1137, 1140 (Colo. App. 2005), *aff'd on other grounds sub nom. City of Florence v. Pepper*, 145 P.3d 654 (Colo. 2006). "To violate equal protection provisions, the classification must arbitrarily single out a group of persons for disparate treatment from other persons who are similarly situated." *Peregoy v. Indus. Claim Appeals Office*, 87 P.3d 261, 265 (Colo. App. 2004).

¶ 27 Claimant argues that we should apply a strict scrutiny standard in reviewing "the lack of public financial disclosures for judges who hear and decide workers' compensation cases." He contends that because the right to a fair hearing is fundamental, the lack of public disclosure of ALJ's and Panel member's financial records is only permissible if it promotes a compelling state interest in the least restrictive manner possible. The Panel asserts that we should apply a rational basis standard of review because section 24–6–202 does not affect a fundamental right or adversely affect a suspect class. We need not determine which standard applies here, because we conclude that workers' compensation claimants and district court litigants are not subject to disparate treatment.

### 2. Analysis

¶ 28 Here, claimant challenges the constitutionality of PALJs, ALJs, and Panel members presiding over workers' compensation claimants when these officers, unlike judges who derive their powers from Article VI of the Colorado Constitution, are not required to disclose their financial records. We are not persuaded by claimant's contentions for three reasons.

¶ 29 First, the C.J.C., by its own terms, applies broadly "to all full-time judges," which it defines as "anyone who is authorized to perform judicial functions, including an officer such as a magistrate, referee, or *member of the administrative law judiciary*." C.J.C. Application I(A), (B) (emphasis added). The C.J.C. thus unambiguously and expressly applies to PALJs, ALJs, and Panel members, contrary to claimant's assertion.

¶ 30 Second, section 24–30–1003(4)(a), C.R.S. 2014, provides that ALJs appointed pursuant to this section shall be subject to the standards of conduct set forth in the C.J.C. We agree with claimant, employer, and the Panel that this statute unambiguously requires workers' compensation ALJs to comply with the financial disclosure provisions contained in section 3.15 of the C.J.C.

¶ 31 Third, the Panel concedes, based on *Youngs,* ¶¶ 58–60, that the executive order applies to the Panel. Since the Panel is charged with interpreting the statutes and regulations governing the Division of Workers' Compensation, we defer to the Panel's "reasonable interpretations" of its own regulations, and only set aside the Panel's interpretation " 'if it is inconsistent with the clear language of the statute or with the legislative intent.' " *Zerba v. Dillon Cos.,* 2012 COA 78, ¶ 37, 292 P.3d 1051 (quoting *Support, Inc. v. Indus. Claim Appeals Office,* 968 P.2d 174, 175 (Colo. App. 1998)). We conclude that this principle similarly applies to its interpretation of the executive order. Accordingly, in light of the Panel's admission that the disclosure rules apply to it and the ALJs, workers' compensation claimants have access to financial disclosure information similar to that available to civil litigants pursuing claims in district court. We therefore conclude that claimant has not been treated differently from other civil litigants, and has not established an equal protection violation.

¶ 32 Because we have accepted the Panel's concession that the executive order applies to both it and workers' compensation ALJs and PALJs, we need not address claimant's contention that the executive order is unconstitutional. In any event, we note that claimant's challenge to the executive order, if successful, would invalidate the basis for Panel members to provide financial disclosures, and would thus be contrary to his obtaining such disclosures.

¶ 33 Claimant next alleges that "an equal protection violation results" because "each justice or judge of a court of record" is subject to the financial reporting requirements of section 24–6–202, which is broader and more onerous than the reporting requirements enumerated in C.J.C. 3.15. While we acknowledge that the statute and the rule do not require the same financial disclosures, we conclude that no equal protection violation results because both require disclosure of gifts of the type claimant's request for production of documents suggests are of most concern to him—the disclosure of any gifts an ALJ or Panel member may receive from an insurer.

¶ 34 At oral argument, claimant argued in the alternative that even if the executive order effectively applies the C.J.C.'s financial disclosure requirements to "member[s] of the administrative law judiciary," such disclosures have not been made to date and information detailing gifts to PALJs, ALJs, and Panel members is not available to workers' compensation litigants. In addition, he observed that no implementing regulations have been adopted identifying an individual or agency to whom such disclosures should be made. Even if claimant's statement is correct, claimant's remedy is with the Division of Workers' Compensation, or the Office of Administrative Courts, not with this court.

¶ 35 Last, to the extent claimant questions the efficacy of previous opinions of this court in his supplemental brief, we refer to our order of December 30, 2014, limiting the scope of supplemental briefing and expressly denying the motion for supplemental briefing to the extent claimant sought to revisit these earlier opinions. Accordingly, we decline to address these arguments raised now in claimant's supplemental brief.

¶ 36 Because section 24–30–1003(4)(a) and the executive order require PALJs, ALJs, and Panel members to disclose their financial records and gifts, the premise upon which claimant's allegation of an equal protection violation rests is fatally flawed. Accordingly, we conclude that claimant has not established that his right to equal protection has been violated.

## IV. Dr. Yamamoto's MMI Determination

¶ 37 Claimant alleges that the ALJ erred by rejecting Dr. Yamamoto's apparent retraction of his MMI determination. He argues that the ALJ was bound by the retraction and erred in concluding otherwise. We disagree.

## A. ALJ Was Not Bound to Accept MMI Retraction

¶ 38 Claimant argues that under *Blue Mesa Forest v. Lopez*, 928 P.2d 831 (Colo. App. 1996), Dr. Yamamoto's retraction of MMI was binding on the ALJ. In *Blue Mesa*, an ALJ determined that the claimant's ATP "had effectively retracted his first opinion concerning MMI and had adopted" the opinion of a specialist that the claimant had reached MMI nine months later than the ATP's initial MMI determination. *Id.* at 833. Claimant contends that because the facts here mirror those in *Blue Mesa*, the same outcome is mandated.

¶ 39 However, this analysis ignores procedural distinctions between this case and *Blue Mesa* and ignores *Blue Mesa*'s holding that when an ATP issues conflicting MMI reports, "it is for the ALJ to resolve the conflict, and the ALJ may do so without requiring the claimant to obtain an IME." *Id.* In *Blue Mesa*, unlike here, the ALJ found that the ATP *had* retracted his earlier MMI determination, a finding that the Panel and a division of this court both affirmed. Thus, when Dr. Yamamoto signed a statement seeking to retract his earlier MMI determination, it was within the ALJ's discretion to accept or reject that retraction. Contrary to claimant's interpretation of *Blue Mesa*, the ALJ was not bound to accept one of Dr. Yamamoto's reports over another. *See id.*

¶ 40 In addition, as the Panel points out, Dr. Yamamoto's June 2012 MMI determination became final and unappealable because claimant admittedly did not challenge employer's FAL.

> Once the treating physician has determined the claimant to be at MMI, the employer or insurer may file an FAL. § 8–42–107.2(2)(a)(I)(A), [C.R.S. 2014]. Unless the claimant requests the selection of an independent medical examiner within thirty days, the treating physician's findings and determinations are binding on all parties and on the Division. § 8–42–107.2(2)(b).

*Williams v. Kunau*, 147 P.3d 33, 36 (Colo. 2006). Because claimant did not object to employer's FAL or seek a DIME, Dr. Yamamoto's June 2012 MMI determination became final and binding on the parties and the ALJ. This procedural posture distinguishes *Blue Mesa* from the facts currently before the court and renders *Blue Mesa*'s outcome inapposite.

## B. Substantial Evidence Supported the ALJ's MMI Finding

¶ 41 The ALJ found that Dr. Yamamoto's "opinions were equivocal" and that he had "rescinded his determination that [c]laimant reached MMI then ... recanted the rescis[s]ion." Consequently, the ALJ concluded that Dr. Yamamoto had not made a mistake in his original MMI determination that would warrant reopening.

¶ 42 Reopening is permitted on several grounds, including mistake. *See* § 8–43–303(1), C.R.S. 2014. "The ground of 'mistake' as used in [section 8–43–303] means any mistake, whether of law or fact." *Ward v. Azotea Contractors*, 748 P.2d 338, 341 (Colo. 1987). A mistake in diagnosis may be "sufficient to justify reopening." *Berg v. Indus. Claim Appeals Office*, 128 P.3d 270, 273 (Colo. App. 2005).

¶ 43 The party attempting to reopen a claim "shall bear the burden of proof as to any issues sought to be reopened." § 8–43–303(4). Thus, claimant bore the burden of demonstrating that a mistake meriting reopening had occurred. *See Jarosinski v. Indus. Claim Appeals Office*, 62 P.3d 1082, 1084 (Colo. App. 2002); *City & Cnty. of Denver v. Indus. Claim Appeals Office*, 58 P.3d 1162, 1164 (Colo. App. 2002).

¶ 44 An ALJ has broad discretionary authority to determine whether a claimant has met his burden of proof justifying reopening. *See Renz v. Larimer Cnty. Sch. Dist. Poudre R–1*, 924 P.2d 1177, 1181 (Colo. App. 1996). Indeed, section 8–43–303 states simply that an ALJ "may" reopen a claim if a change in condition or mistake is demonstrated. The statutory reopening authority granted ALJs is thus "permissive, and whether to reopen a prior award when the statutory criteria have been met is left to the sound discretion of the ALJ." *Cordova v. Indus. Claim Appeals Office*, 55 P.3d 186, 189 (Colo. App. 2002). An ALJ's decision to grant or deny a petition to reopen may there-

fore "be reversed only for fraud or clear abuse of discretion." *Wilson v. Jim Snyder Drilling,* 747 P.2d 647, 651 (Colo. 1987); *see also Heinicke v. Indus. Claim Appeals Office,* 197 P.3d 220, 222 (Colo. App. 2008) ("In the absence of fraud or clear abuse of discretion, the ALJ's decision concerning reopening is binding on appeal.").

¶ 45 Here, the record supports the ALJ's determination that Dr. Yamamoto's revised opinion was "equivocal," that he had not rescinded his MMI determination, and that no mistake had been made meriting reopening. In his deposition, Dr. Yamamoto testified that, in retrospect, claimant "was not at MMI" in June 2012. However, he also testified that (1) claimant's condition remained unchanged, with "pain in exactly the same place" in September 2013 as it had been in June 2012 when Dr. Yamamoto initially placed claimant at MMI; (2) no surgeon opined that surgery would have been appropriate in June 2012; (3) he "wish[ed he] would have sent [claimant] to [a different surgeon for consult] in June 2012"; and, most notably, (4) he *declined* to characterize his June 2012 MMI determination as "a mistake."

¶ 46 These facts support the ALJ's conclusion that Dr. Yamamoto equivocated about MMI and did not rescind his June 2012 MMI determination. We therefore perceive no "fraud or clear abuse of discretion" in the ALJ's finding that Dr. Yamamoto had not rescinded his MMI determination and was not mistaken in placing claimant at MMI in June 2012. *See Wilson,* 747 P.2d at 651. Consequently, we find no fraud or abuse of discretion in the ALJ's denial of claimant's reopening request or the Panel's affirmance thereof. *See Heinicke,* 197 P.3d at 222.

## V. Challenges to Evidentiary Rulings

¶ 47 Finally, claimant challenges a number of the ALJ's evidentiary rulings. He essentially argues that employer abused the discovery process by failing to disclose evidence and testimony to be presented, both by experts and by counsel. He argues that as a result of these abuses, he was unprepared and surprised by the evidence presented at the hearing, and that employer should have been sanctioned for its actions. He contends that these alleged abuses warrant setting aside the ALJ's and Panel's orders. We disagree.

### A. No Sanctions Required for Failure to Disclose MRI

¶ 48 Claimant first contends that the ALJ erred by initially ruling that employer "could not present MRI films or testimony about the films due to non-disclosure by" employer, but later "reversing" herself. He argues that because "the films and testimony" were originally excluded, he "did not have the incentive or opportunity to cross-examine Dr. Sollender regarding the authenticity of the films" and did not lay any foundation to place the MRI films into evidence. He further claims that because Dr. Sollender testified about the films, "the case was tried by unfair surprise." We disagree.

¶ 49 Our review of the record shows that the ALJ never admitted the MRI films. She ruled that she did not "even need to see that," and that the MRIs were not in evidence. We have found no indication, and claimant has not pointed us to any, where this ruling was reversed. We therefore see no basis for claimant's argument that the ruling was "reversed" and "surprised" him.

¶ 50 In addition, contrary to claimant's contention, the ALJ did not bar testimony concerning the MRIs. Rather, she repeatedly noted that testimony regarding the films was admissible and would be considered. She twice stated, "We ... have the testimony" about MRI films, that she would "not strike[e] this witness's testimony or disregard[ ] it," and that she would not impose "any sanctions against [employer] for any alleged failure to respond to discovery, especially when there's been no motion to compel [and] no indication that a prehearing conference was requested in this matter." In light of the ALJ's actual ruling, we reject claimant's contention that he was unfairly prejudiced or surprised by the alleged "reversal" of her ruling.

¶ 51 Claimant nonetheless contends that the alleged failure to disclose mandated the imposition of a sanction against employer. However, "[u]nder section 8–43–207(1), C.R.S. 20[14], the ALJ is vested with wide

discretion in the conduct of evidentiary proceedings." *Ortega v. Indus. Claim Appeals Office*, 207 P.3d 895, 897 (Colo. App. 2009). Therefore, we will not set aside an ALJ's evidentiary ruling concerning sanctions absent a showing that the ALJ abused his or her discretion in issuing an order. *See Sheid*, 826 P.2d at 399 ("The appellate standard of review governing sanctions under C.R.C.P. 37 is whether the tribunal that imposed the sanction abused its discretion.").

¶ 52 Here, we perceive no basis for concluding that the ALJ's evidentiary ruling regarding the admissibility of the MRIs and testimony about the MRIs exceeded the bounds of reason or misapplied the law. *See Coates, Reid & Waldron*, 856 P.2d at 856. Accordingly, we conclude that the ALJ did not abuse her discretion when she denied claimant's request for sanctions for employer's alleged failure to disclose the MRI films.

### B. Remaining Alleged Evidentiary Violations

¶ 53 Claimant's remaining evidentiary contentions assert various abuses of discretion by the ALJ. Claimant contends that the ALJ abused her discretion by (1) admitting Dr. Sollender's MMI opinion; (2) permitting Dr. Sollender to testify beyond the scope of employer's disclosures; (3) imposing "an impossible burden" on claimant by demanding that he identify which documents were allegedly not disclosed; and (4) allowing employer's counsel to testify as a witness but prohibiting claimant from cross-examining her. We perceive no abuse of discretion in any of these rulings.

¶ 54 As noted above, "[e]videntiary decisions are firmly within an ALJ's discretion, and will not be disturbed absent a showing of abuse of that discretion." *Youngs v. Indus. Claim Appeals Office*, 2013 COA 54, ¶ 40, 316 P.3d 50; *see also Ortega*, 207 P.3d at 897. As we have noted, "[a]n abuse of discretion occurs when the ALJ's order is beyond the bounds of reason, as where it is unsupported by the evidence or contrary to law." *Heinicke*, 197 P.3d at 222.

#### 1. MMI Opinions of Dr. Sollender

¶ 55 We know of no statute, case law, or rule that prohibits the admission of expert testimony concerning MMI when

MMI is in dispute. We have already concluded that Dr. Yamamoto's testimony, reports, and notes concerning MMI conflicted. Consequently, the ALJ was not "bound" by Dr. Yamamoto's February and August 2013 notes. Moreover, if the ALJ was "bound" by any MMI determination, it was the June 2012 MMI date and impairment rating because claimant did not challenge employer's FAL based on Dr. Yamamoto's June 2012 report. *See Williams*, 147 P.3d at 36. Accordingly, we reject claimant's contention that the ALJ abused her discretion by admitting Dr. Sollender's MMI opinion.

#### 2. Scope of Dr. Sollender's Testimony

¶ 56 Claimant also contends that Dr. Sollender's testimony exceeded the scope of employer's disclosures. But, we have reviewed employer's extensive interrogatory responses and extensive summation of Dr. Sollender's anticipated testimony and conclude that the disclosure broadly incorporated the scope of his testimony. Short of providing claimant with an anticipated verbatim transcript of what Dr. Sollender was going to say, we are hard-pressed to discern what additional disclosure claimant believes he was entitled to receive.

#### 3. Imposition of Burden to Identify Missing Documents

¶ 57 Similarly, we find no abuse of discretion in the ALJ's asserted expectation that claimant's "counsel ... know things he could not possibly know," when the ALJ asked claimant's counsel for clarification as to what documents he believed were missing and had not been disclosed. We do not find this question unreasonable in light of employer's counsel's statement that all relevant documents had been produced and that claimant neither moved to compel the production of "missing" documents nor requested a prehearing conference. Essentially, the ALJ was asking claimant's counsel to explain what documents he thought were missing, to assist her in determining whether employer had violated its discovery obligations. We therefore conclude that the ALJ's questions were not inappropriate.

#### 4. Testimony by Employer's Counsel

¶ 58 Lastly, claimant argues that employer's counsel "repeatedly testified" at the hearing, but that he was deprived of the opportunity to cross-examine her. He claims he had "no other way [to] impeach Dr. Sollender regarding the conversations the former had with [employer's] counsel." Nevertheless, claimant's counsel did not question Dr. Sollender about conversations he may have had with employer's counsel. The statement he points to in support of his claim that employer's counsel was "testifying" appears to be no more than a question posed by examining counsel to a witness. We perceive nothing inappropriate in either the question posed or the ALJ's overruling of claimant's objection.

### VI. Conclusion

¶ 59 Accordingly, we reject claimant's equal protection challenge, and we conclude that the ALJ neither erred nor abused her discretion in issuing her rulings in this case. Because substantial evidence supports the ALJ's decision denying claimant's request to reopen his claim, we will not set aside the Panel's decision affirming it. *See Heinicke*, 197 P.3d at 222.

¶ 60 The order is affirmed.

TERRY and RICHMAN, JJ., concur.