25CA0858 Pueblo v ICAO 02-19-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0858
Industrial Claim Appeals Office of the State of Colorado
WC No. 5-209-220

---

City of Pueblo,

Petitioner,

v.

Industrial Claim Appeals Office of the State of Colorado and Bryce Boyer,

Respondents.

---

ORDER SET ASIDE AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE GOMEZ
Pawar and Graham*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 19, 2026

---

Ruegsegger Simons & Stern, LLC, Michele Stark Carey, Lori Miskel, Denver, Colorado, for Petitioner

No Appearance for Respondent Industrial Claim Appeals Office

Michael W. Seckar, P.C., Lawrence D. Saunders, Pueblo, Colorado, for Respondent Bryce Boyer

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1    In this workers' compensation action, an administrative law judge (ALJ) denied Bryce Boyer's claim for medical benefits relating to his post-traumatic stress disorder (PTSD).  Boyer appealed to the Industrial Claim Appeals Office (the Panel), which reversed the ALJ's decision.  The City of Pueblo now appeals the Panel's order.  Because we conclude that the outcome in this case rests on a factual dispute that the ALJ never resolved, we set aside the Panel's order and remand the case for further proceedings.

## I.    Background

¶ 2    Boyer has worked as a firefighter and medic for the City of Pueblo for over thirty years.  In 2016, his primary care physician and his therapist diagnosed him with PTSD from witnessing numerous traumatic events at work, such as shootings, car accidents, and suicides.  His primary care physician prescribed medications, therapy, and time off work.  His condition stabilized, and he returned to work after two months off.  He didn't seek any workers' compensation benefits at that time (although, as we discuss later, he wouldn't have been eligible for benefits at that time).  Eventually, he began working in a different position that didn't involve responding to emergency calls.

1

¶ 3    In March 2022, Boyer received news that a coworker had attempted suicide by hanging. Boyer had been called to the scene of suicides by hanging as part of his previous work as a firefighter and medic. He went to the hospital and stayed with the coworker, who was unconscious and had marks on his neck, for several hours until the coworker's family arrived. The coworker survived.

¶ 4    The next month, Boyer visited his primary care physician, partly due to a respiratory illness. According to the physician's notes, Boyer reported that a change in his shifts earlier that year, including working two fourteen-hour night shifts each week, had affected his sleeping patterns and that his stress, anxiety, and anger issues and feelings of depression had returned. His physician prescribed new medications and suggested continued therapy. The notes from a follow-up visit a few weeks later indicate that treatment had somewhat helped but that Boyer was still experiencing stress.

¶ 5    In May 2022, Boyer filed an accident report with the city, citing a "significant increase in depression" due to "exposure to co-worker with life-threatening injury."

¶ 6 Shortly thereafter, Boyer began treatment with Dr. Thomas Centi, an occupational medicine physician. Dr. Centi documented that Boyer reported a "traumatic event dealing with an injured and tragically ill employee" and had been treated by his primary care physician but that his issues with recall, stress, and sleep had become more severe. Dr. Centi diagnosed Boyer with PTSD and referred him to a psychiatrist.

¶ 7 The psychiatrist, Dr. Stephen Moe, noted that Boyer had experienced "an upsurge in a range of psychiatric symptoms, including depression, anger, and anxiety, set in motion by the near-fatal suicide attempt of a fellow firefighter." Dr. Moe also noted that since the shift change, Boyer had started sleeping in his office and was occasionally called out to large fires. As a result, his sleep had been significantly disrupted. Dr. Moe's impressions were that "Boyer's symptoms [we]re in keeping with PTSD caused by the cumulative effect of exposures to emotionally traumatic events that by themselves were not responsible for acute symptoms." Dr. Moe continued treating Boyer for over a year.

¶ 8 In early 2024, Boyer's counsel applied for a hearing before an ALJ because the city was no longer authorizing treatment with

Dr. Centi or Dr. Moe. The city responded by contesting "causation; relatedness; claimant did not sustain an injury or occupational disease in the course of or arising out of his employment; preexisting condition; intervening event." At the hearing, the parties agreed to limit the issue to compensability for payment of a single visit with Dr. Centi so that they could obtain an immediately appealable order. The only two witnesses were Boyer and Dr. Robert Kleinman, a physician who performed an independent medical examination (IME) at the city's request. However, the ALJ also received detailed notes from Dr. Centi's and Dr. Moe's files. At the conclusion of the hearing, the ALJ issued an order denying compensability. Boyer appealed to the Panel, which reversed the ALJ's order and awarded the requested medical benefit. The city now appeals.

## II. Standard of Review and Applicable Law

¶ 9 We may set aside an order entered by the Panel only upon the following grounds:

> That the findings of fact are not sufficient to permit appellate review; that conflicts in the evidence are not resolved in the record; that the findings of fact are not supported by the evidence; that the findings of fact do not

support the order; or that the award or denial of benefits is not supported by applicable law.

§ 8-43-308, C.R.S. 2025.

¶ 10     We may not alter an ALJ's factual findings if they are supported by substantial evidence.  *Id.*; *Kilpatrick v. Indus. Claim Appeals Off.*, 2015 COA 30, ¶ 59.  Substantial evidence is that amount of probative evidence that a rational fact finder would accept as adequate to support a conclusion, without regard to the existence of conflicting evidence.  *Metro Moving & Storage Co. v. Gussert*, 914 P.2d 411, 414 (Colo. App. 1995).  Accordingly, evidence that is probative, credible, and competent, such that it warrants a reasonable belief in the existence of a particular fact, is considered substantial evidence.  *Town of Kiowa v. Indus. Claim Appeals Off.*, 2024 COA 36, ¶ 11.

¶ 11     Until July 2018, a claimant seeking to establish a workers' compensation claim for a mental impairment had to prove that they suffered from a permanent disability arising out of a "psychologically traumatic event" that was "generally outside of a worker's usual experience."  § 8-41-301(2)(a), C.R.S. 2017.

¶ 12    But effective July 1, 2018, the General Assembly broadened the scope of a mental impairment that could support a claim. A claimant still had to prove that they suffered from a permanent disability arising out of a "psychologically traumatic event," but the statute no longer excluded all events that were within a worker's usual experience. § 8-41-301(3)(a), C.R.S. 2025. Instead, a "psychologically traumatic event" may include "an event that is within a worker's usual experience," so long as "the worker is diagnosed with [PTSD] by a licensed psychiatrist or psychologist after the worker experienced exposure to" certain kinds of events, including, as relevant here, "repeatedly . . . witness[ing] the serious bodily injury, or the immediate aftermath of the serious bodily injury, of one or more people as the result of the intentional act of another person or an accident." § 8-41-301(3)(b)(II)(C). The amended statute applies to "injuries sustained on or after" July 1, 2018. Ch. 328, sec. 2, § 8-41-301, 2017 Colo. Sess. Laws 1757-58.

### III.    Administrative Proceedings

¶ 13    The ALJ concluded that the amended statute didn't apply, reasoning that "[i]n order for this new section to apply, [Boyer] must have the diagnosis of the PTSD from the event" — that is, from his

March 2022 encounter with the coworker who attempted suicide. The ALJ expressed that he was "persuaded by the opinions of Dr. Kleinman that [Boyer] does not have PTSD from th[at] event" or from an incident half a year earlier involving an argument with a different coworker. Because the ALJ thus found that Boyer "does not have PTSD related to the events between 2021 and 2023," he applied the pre-amendment criteria to the earlier incidents Boyer had experienced and concluded that the claim wasn't compensable because those events were within Boyer's usual work experience.

¶ 14 In reversing the ALJ's order, the Panel rejected the city's argument (and the ALJ's apparent assumption) that, because Boyer's initial PTSD diagnosis occurred before the statutory amendment, he had to prove that the events he witnessed after that date were "sufficient to substantiate a new diagnosis of PTSD." Applying legal principles regarding occupational diseases, the Panel determined that Boyer's request for medical benefits to treat the symptoms of his PTSD "need not be accompanied by the establishment of a date of onset." Instead, the Panel explained, the medical benefits "must be shown to be related to treatment for PTSD that resulted from repeatedly viewing serious bodily injury or

its immediate aftermath." The Panel summarized some of the medical evidence suggesting that the March 2022 incident "served to intensify [Boyer's] feelings of depression" and concluded that it was "largely undisputed that [Boyer's] request for medical benefits is related and designed to treat his PTSD condition that arose from his work-related PTSD diagnosis." Therefore, the Panel ordered that Boyer was entitled to the requested benefit.

## IV. Analysis

¶ 15 At the outset, we observe that both parties have agreed in this appeal — in their briefing as well as at oral argument — that under the current statute, a work-related aggravation of pre-existing PTSD may be compensable. But they disagree whether any incidents following the statutory amendment — in particular, the incident in March 2022 when Boyer learned of a coworker's attempted suicide and visited the coworker in the hospital — aggravated Boyer's pre-existing PTSD.

¶ 16 The city argues that by crediting Dr. Kleinman's opinion and finding no compensable injury in 2022, the ALJ impliedly found that the March 2022 incident did not aggravate Boyer's PTSD. In particular, the city points to Dr. Kleinman's opinion in his report

8

that "[t]he recent events" — including the March 2022 incident and other incidents between 2021 and 2023 — "did not exacerbate or aggravate PTSD." The city also points to portions of Boyer's medical records that it claims suggest that the return of his symptoms was related more to other (non-compensable) issues, like his shift change and argument with a coworker, than to the March 2022 incident or that the symptoms he experienced weren't sufficiently severe to constitute continued PTSD. The city argues that this evidence supports the ALJ's decision and that it was improper for the Panel to reweigh the evidence, reject Dr. Kleinman's opinion in favor of Dr. Centi's and Dr. Moe's, and substitute its own judgment for that of the ALJ.

¶ 17    Boyer, for his part, argues that the ALJ failed to make any finding as to whether the March 2022 incident aggravated his pre-existing PTSD because the ALJ was applying the wrong legal standard, viewing the March 2022 incident in isolation rather than in conjunction with the various incidents preceding the statutory amendment. He also argues that the evidence overwhelmingly — if not uniformly — shows that the March 2022 incident aggravated his PTSD. For instance, he points to parts of Dr. Centi's and

Dr. Moe's records that detail his increased anger, irritability, anxiety, and depression and link them to the March 2022 incident. He also points to parts of Dr. Kleinman's report that he claims demonstrate the exacerbation of his PTSD following the March 2022 incident. Thus, he argues, the Panel correctly rejected the ALJ's order and, applying the correct standard, determined that his claim was compensable.

¶ 18    On close review of the order, we agree with Boyer that the ALJ did not make any express or implied findings as to whether the March 2022 incident aggravated Boyer's PTSD. Nor did the ALJ make any findings as to whether Boyer continues to experience symptoms from his pre-existing PTSD. Instead, the ALJ found only that the March 2022 incident didn't, by itself, support a diagnosis of PTSD. But that wasn't the relevant question.

¶ 19    We disagree with Boyer that the evidence points only one way on this issue. The parties' contrasting positions make clear that the evidence could support either finding — that the March 2022 incident aggravated Boyer's pre-existing PTSD or that the incident didn't have that effect. Because the evidence is conflicting, and because it is the ALJ's role to resolve conflicts in the evidence, *see*

10

*Miller v. Indus. Claim Appeals Off.*, 49 P.3d 334, 337 (Colo. App. 2001), we remand the case to the Panel with instructions to return it to the ALJ to resolve this issue, either based upon the existing record or after reopening the record to allow additional evidence on the issue.[1]

### V. Disposition

¶ 20    The Panel's order is set aside, and the case is remanded to the Panel with instructions to return it to the ALJ for additional findings to determine, consistent with this opinion, whether Boyer's claim is compensable.

JUDGE PAWAR and JUDGE GRAHAM concur.

---

[1] Counsel for Boyer suggested at oral argument that even if Boyer's PTSD wasn't aggravated by — but simply continued after — the March 2022 incident, Boyer is still entitled to the medical benefit because he suffered an injury after the statutory amendment. We decline to address this issue because the ALJ also didn't find whether there was any compensable injury after the amendment.