COLORADO COURT OF APPEALS
 2016 COA 56
 
 

Court of Appeals No. 15CA0554
Office of Administrative Courts Case No. OS 2014-0004
Campaign Integrity Watchdog,
Petitioner-Appellant,
v.
Coloradans for a Better Future, 
Respondent-Appellee, and
Office of Administrative Courts, 
Appellee.

JUDGMENT AFFIRMED
Division I
Opinion by JUDGE TAUBMAN
Miller and Fox, JJ., concur
Announced April 7, 2016

Matthew Arnold, Denver, Colorado, Authorized Representative of Campaign Integrity Watchdog
Bayer & Carey, P.C., Andrew C. Nickel, Denver, Colorado, for Respondent-Appellee
No Appearance for Appellee
 
 
 
¶1       This is the third in a series of complaints brought by claimant, Campaign Integrity Watchdog (CIW), or its principal officer, Matthew Arnold, against Coloradans for a Better Future (CBF), a political organization under section 1-45-103(14.5), C.R.S. 2015, to challenge CBF’s alleged failure to report contributions and spending. In 2012, Arnold lost the Republican primary election for University of Colorado Regent to Brian Davidson. During the runup to the primary election, CBF purchased a radio advertisement supporting Davidson and other radio advertisements containing messages unfavorable to Arnold. After the election, Arnold, and later CIW with Arnold as its principal officer, filed a series of complaints with the Colorado Secretary of State (Secretary) alleging violations of Colorado’s Fair Campaign Practices Act (FCPA).
¶2       CIW appears without counsel and appeals the decision of the administrative law judge (ALJ) from the Office of Administrative Courts (OAC) dismissing its complaint following a motion for summary judgment and concluding that no reporting violations related to the payment of Arnold’s court costs had been established on the part of CBF.[1] Specifically, CIW challenges CBF’s failure to report funds donated to CBF to pay Arnold’s court costs from an earlier case. CIW argues that those funds constituted a contribution and spending and were incorrectly reported in CBF’s initial January 2014 contributions and expenditures report. We affirm the AUJ’s decision and award CBF costs on appeal.
I. Background
¶3       The history between Arnold, CIW, and CBF is more fully 
described in Campaign Integrity Watchdog v. Coloradans for a Better Future, 2016 COA 51, ___ P.3d ___ (CIW I).
¶4       In Arnold v. Coloradans for a Better Future, No. OS 2012-0024 and No. 2012-0025 (O.A.C. Jan. 11, 2013), the AUJ imposed a penalty of $4525 for CBF’s failure to report certain electioneering communications. When CBF failed to pay the penalty, Arnold filed a complaint against CBF in the Denver District Court to enforce the penalty. Arnold prevailed, and the district court ordered CBF to pay its penalty, as well as Arnold’s court costs of $200.20 incurred in bringing the action.
¶5       The Colorado Justice Alliance (CJA) donated $200.20 to enable CBF to satisfy its obligation to pay Arnold’s court costs. In the complaint at issue here, Campaign Integrity Watchdog v. Coloradans for a Better Future, No. OS 2014-004 (O.A.C.) Feb. 25, 2015, CIW alleged CBF failed to report accurately (1) contributions it had received from CJA and (2) using those funds to pay Arnold’s court costs.[2] The case before the ALJ was continued pending CBF’s response to a subpoena duces tecum in the Denver District Court. The district court compelled the production of documents requested by CIW. When CBF did not comply with the order, the district court issued a contempt citation. Ultimately, CBF produced the documents sought by CIW’s subpoena. Following production of the documents, CIW moved to reset the administrative case for hearing. CBF moved for summary judgment, which the ALJ granted.
 
¶6       The ALJ found the following facts were not in genuine dispute. On January 22, 2014, CBF filed a contribution and expenditures report with the Secretary. Although CBF’s next report was not due until May 5, 2014, CBF filed the report early because it intended to terminate its activities as a political organization.[3]
¶7       Also on January 22, 2014, CBF’s legal counsel sent an e-mail to the Secretary seeking to amend the report to show that CJA contributed $200.20 to pay Arnold’s court costs.[4] At the time, the Secretary’s electronic reporting system (TRACER) did not allow changes to be made to termination reports. Because CBF was unable to make the amendment itself, it requested the Secretary’s staff to do so. The Secretary’s staff attempted to update the report to reflect CBF’s amendment, but discovered they were also unable to do so because of TRACER’s limitations. CIW filed its complaint in this case on March 3, 2014. CBF’s report was publicly amended on March 6, 2014, as requested by CBF’s legal counsel.
¶8       Before the ALJ, CIW raised two arguments — one concerning contributions and one concerning spending. First, CIW alleged that the $200.20 donation to pay Arnold’s court costs was a contribution to CBF that should have been reported on the initial report. The ALJ concluded that CBF had already reported the contribution to the Secretary when CIW filed its complaint in March 2014 and that the complaint was premature because the report, which was filed in January 2014, was not due until May 2014. Second, CIW alleged that CBF failed to report the payment of Arnold’s costs as spending in violation of section 1-45-108.5(1)(b), C.R.S. 2015. The ALJ found that the money paid to Arnold for the court costs did not meet the definition of spending under the FCPA.
¶9       CIW raises two contentions on appeal: (1) the $200.20 CJA donated to help CBF satisfy its obligation to pay Arnold’s court costs was a contribution that was incorrectly reported on the initial report and (2) the $200.20 CBF paid to Arnold constituted spending that should have been reported. We disagree.
II. Motion for Summary Judgment Standard
¶10       To the extent practicable, the Colorado Rules of Civil Procedure apply to matters before the OAC. Dep’t of Pers. & Admin. Reg. 104-1, 1 Code Colo. Regs. 104-1:15. Because this case was litigated as a motion for summary judgment, we assume the law applicable to C.R.C.P. 56 motions is appropriate.[5]
¶11       CBF contends that we review under the clearly erroneous standard. CBF is mistaken. We review the entry of summary judgment de novo. McIntyre v. Bd. of Cty. Comm’rs, 86 P.3d 402, 406 (Colo. 2004).
¶12       Summary judgment should only be entered "when there is no disputed issue of material fact and the moving party is entitled to judgment as a matter of law." Id. In reviewing a summary judgment, "the nonmoving party is entitled to the benefit of all favorable inferences that may be drawn from the undisputed facts, and all doubts as to the existence of a triable issue of fact must be resolved against the moving party." Busse v. City of Golden, 73 P.3d 660, 665 n.10 (Colo. 2003). Legal conclusions drawn from facts are not disputed facts. See generally Lewis v. Colo. Rockies Baseball Club, Ltd., 941 P.2d 266, 271 (Colo. 1997).
¶13       CBF filed a motion for summary judgment to which it attached an affidavit from its attorney, Andy George, detailing CBF’s attempts to file its termination report on January 22, 2014, and correcting it later that day to report CJA’s payment of its court costs. CBF also attached several other exhibits, including e-mails between CBF and the Secretary, invoices from the Secretary, and the termination report. In response, CIW attached several exhibits including legal invoices addressed to CBF and CBF bank statements. The ALJ summarized the relevant facts in his opinion and concluded there were no material facts in genuine dispute. Apart from asserting the ALJ invented or misrepresented facts, issues that we discuss below, CIW does not otherwise contend any material facts are in dispute.
III. Contributions
¶14       CIW argues that the $200.20 CJA donated to help CBF satisfy its obligation to pay Arnold’s court costs was a contribution that was incorrectly reported on CBF’s report. We disagree.
 
A. Applicable Law
¶15       A political organization, as defined in section 1-45-103(14.5), must disclose "[a]ny contributions it receives, including . . . each person who has contributed twenty dollars or more to the political organization in the reporting period, and . . . each natural person who has made a contribution of one hundred dollars or more to the political organization[.]" § 1-45-108.5(1)(a). Contributions are defined in the Colorado Constitution. Colo. Const. art. XXVIII, § 2(5)(a). The FCPA also defines contribution. § 1-45-103(6).[6]
¶16       Political organizations are required to file periodic contribution and expenditure reports with the Secretary. § 1-45-108(2)(a)(I), C.R.S. 2015; § 1-45-108.5(1).
B. Analysis
¶17       CIW raises three contentions in relation to the AUJ’s conclusion concerning contributions: (1) the ALJ abused his discretion when he "invented" findings of fact contravening evidence in the record; (2) the AUJ "misrepresented facts" when he concluded that CBF’s requested report amendment corrected deficiencies in the initial report; and (3) the ALJ erred when he concluded that CIW’s complaint was premature because CBF’s report was not yet due, despite the fact that the report had been filed and was intended as a final termination report. We disagree with each of these contentions.
1. "Invented Findings of Fact"
¶18       In appealing the AUJ’s decision, CIW argues that "it is an abuse of discretion to invent findings of ‘fact’ contravening evidence on the record." First, CIW fails to cite specific factual findings by the ALJ to which it objects. It also does not cite any facts it believes the AUJ "invented" and does not present contravening evidence in the record to dispute the AUJ’s factual findings. Second, CIW did not provide a record of what was presented to the ALJ below on the motion for summary judgment. Therefore, we assume that the court’s recitation of the facts is correct. See Colo. Dep’t of Pub. Health & Env’t, 60 P.3d 779, 787 (Colo. App. 2002).
¶19       Further, when a court decides a summary judgment motion, it does not engage in factfinding. McGee v. Hardina, 140 P.3d 165, 166 (Colo. App. 2005). While the ALJ incorrectly included in his opinion a heading entitled, "Findings of Fact," it nevertheless, in the next sentence, cited the correct standard applicable to a motion for summary judgment.
2. Misrepresenting Facts
¶20       CIW contends the ALJ misrepresented facts regarding CBF’s request to amend its contributions and expenditures report, because, as CIW argues, CBF’s amendment request failed to correct the deficiencies (specifically, accurate listing of payment recipient) as alleged in the complaint and as required by law. We address the accurate listing of the payment recipient below. Further, we conclude that whether the requests to amend the report corrected the initial report is a question of law, not fact, because it concerns CBF’s compliance with the FCPA. Therefore, the allegations in CIW’s complaint made legal conclusions, upon which the AUJ did not have to rely. There were no material facts in dispute, and there was only a legal dispute as to whether CBF’s report amendments were consistent with the statutory requirements.
3. Prematurity of Complaint
¶21       Under section 1-45-108(1)(a)(I), CBF was required to report its contributions and expenditures to the Secretary. When CIW’s complaint was filed on March 3, 2014, CBF had already reported to the Secretary the additional $200.20 that was donated to satisfy its obligation to Arnold. The fact that, due to the limitations of its TRACER system, the Secretary was unable to post that amendment until March 6, 2014, was not CBF’s fault, according to the AUJ. We conclude the report was corrected on January 22, 2014, when CBF notified the Secretary of its mistake.
¶22       The AUJ also concluded that "by the time the complaint was filed on March 3, 2014, [CBF] had already reported to the Secretary." However, we conclude under the circumstances of this case that because the report was corrected on January 22, 2014, the same day on which the original report was filed, any complaint filed after January 22, 2014, about the untimeliness of CBF’s reporting of contributions was necessarily moot. See Gresh v. Balink, 148 P.3d 419, 421 (Colo. App. 2006) ("A case is moot when the relief sought, if granted, would have no practical legal effect on the controversy."). Therefore, we need not address CIW’s contention that the complaint was timely.
¶23       Nevertheless, CIW argues that there is no "exemption for reports filed before scheduled due dates" and "no ‘grace period’ specially granted [to] reports prior to the regularly scheduled due date." Because we conclude the report was corrected on January 22, 2014, the AUJ did not create any "grace period."
¶24       CIW also argues that CBF violated the FCPA by listing the payee of the $200.20 as the Denver District Court, which ordered the payment, rather than Arnold, to whom the court costs should have been paid. Any error in this regard is too insignificant to amount to a violation of the reporting law. See Leiting v. Mutha, 58 P.3d 1049, 1053 (Colo. App. 2002) (error will be disregarded unless it substantially affected the fairness of the proceedings). CBF substantially complied with its reporting obligations by reporting that a payment for $200.20 had been made in compliance with an order of the Denver District Court.
¶25       Therefore, we conclude the AUJ did not err when he concluded CBF correctly reported the $200.20.
IV. Spending
¶26       The ALJ concluded that the payment of Arnold’s court costs did not meet the FCPA definition of spending and therefore CBF did not need to report them as such. CIW contends that the money CBF spent on paying Arnold’s costs was reportable. We disagree.
 
¶27       We addressed the meaning of spending in section 1-45-103(16.5) in CIW I, ¶___, ___ P.3d at ___. We rejected a similar contention by CIW there and agree with the conclusion of the division in CIW I.
¶28       Here, CBF spent money paying Arnold’s court costs. The funds were not "expended influencing or attempting to influence the selection, nomination, election, or appointment of any individual to any state or local public office in the state." § 1-45-103(16.5). Therefore, we conclude the money CBF spent did not constitute reportable spending.
V. CIW’s Request for Costs and Fees
¶29       CIW requests we award it reasonable costs and fees in bringing this appeal pursuant to section 1-45-111.5(2), C.R.S. 2015. However, as the division held in in CIW I, ¶¶___, ___ P.3d at ___, section 1-45-111.5(2) does not apply to costs on appeal. Therefore, we deny CIW’s requests for costs and fees.
VI. CBF’s Request for Attorney Fees and Costs
¶30       CBF requests we award it sanctions, costs, and attorney fees against CIW on the basis that CIW’s appeal is frivolous and vexatious. Additionally, CBF requests we direct payment of attorney fees for all amounts requested before the ALJ in defense of the case on the merits. We award CBF only costs on appeal.
A. Applicable Law
¶31       If we determine that an appeal is frivolous, we may award damages as appropriate, including attorney fees and single or double costs to the appellee. C.A.R. 38(b).
¶32       Appeals may be deemed frivolous in two ways. Averyt v. Wal-Mart Stores, Inc., 2013 COA 10, ¶40, 302 P.3d 321, 327. First, they may be frivolous as filed, where the "judgment by the tribunal below was so plainly correct and the legal authority contrary to appellant’s position so clear that there is really no appealable issue." Id. (quoting Castillo v. Koppes-Conway, 148 P.3d 289, 292 (Colo. App. 2006)). Second, an appeal may be frivolous as argued where "the appellant commits misconduct in arguing the appeal." Id. (quoting Martin v. Essrig, 277 P.3d 857, 862 (Colo. App. 2011)).
¶33       If a judgment is affirmed, costs are taxed against the appellant on appeal. C.A.R. 39. Finally, under C.A.R. 39.5, we may award attorney fees to CBF and remand to the tribunal below for determination of amount of any attorney fees.
 
B. Analysis
¶34        Although CBF contends the appeal is frivolous, we conclude that it is not frivolous as filed or as argued.
¶35       First, the appeal is not frivolous as filed. CIW appeals the meaning of spending under the FCPA. CIW I, ¶¶___, ___ P.3d at ___, also announced today, interprets the meaning of spending under Colorado campaign finance laws. Therefore, the judgment of the ALJ below was not so "plainly correct" that there was no appealable issue.
¶36       Second, the appeal is not frivolous as argued. CIW claims that counsel for CBF engaged in "fraudulent (even perjurious) representations." Repeatedly, it argues that CBF made "malicious misrepresentations," as well as engaged in fraud, violated rules of professional conduct, or committed criminal acts. It also inappropriately accuses the AUJ of misrepresenting and "inventing" facts. While it was not appropriate to make ad hominem attacks against the ALJ or CBF and its attorneys, CIW’s arguments and rhetoric do not rise to the level of Castillo and Martin.
¶37       We also deny CBF attorney fees under C.A.R. 39.5. Attorney fees are awardable under C.A.R. 39.5 only if the party seeking them states a legal basis for recovery. In re Marriage of Roddy & Betherum, 2014 COA 96, ¶32, 338 P.3d 1070, 1077. CBF did not state an additional legal basis.
¶38       However, CBF also requests an award of costs pursuant to C.A.R. 39(2). As the prevailing party, CBF is entitled to costs. See Mackall v. JPMorgan Chase Bank, N.A., 2014 COA 120, ¶55, 356 P.3d 946, 956.
VII. Conclusion
¶39       The judgment is affirmed, and we award CBF costs on appeal. JUDGE MILLER and JUDGE FOX concur.

[1] Pursuant to section 13-1-127(2), C.R.S. 2015, an officer of a closely held entity may represent the entity when: (1) the amount at issue does not exceed fifteen thousand dollars, exclusive of costs, interest, or statutory penalties, on and after August 7, 2013 and (2) the officer provides evidence satisfactory to the court of the officer to appear on behalf of the closely held entity. Arnold responded to an order from our court which stayed the proceedings unless he established the requirements of section 13-1-127. After Arnold established the necessary requirements, the court discharged the order. Therefore, although Arnold is not an attorney, he is able to represent CIW in this case.
[2] Matthew Arnold formed CIW, a limited liability company, by filing its articles of organization pursuant to sections 7-80-203 and 7-80204, C.R.S. 2015, in August 2013. 
[3] "Terminate," a phrase used by the ALJ, is a term of art in the Secretary’s regulations implementing the FCPA. See Dep’t of State Reg. 1505-6, 8 Code Colo. Regs. 1505-6:4.4 (issue committees); 1505-6:12.3 (committees generally); 1505-6:18 (application penalties and violations for failure to comply); Colo. Sec. of State, Colorado Campaign and Political Finance Manual 34-35 (rev. July 2015), https://perma.cc/D792-UDVK. A political candidate, committee, or organization "terminates" and no longer exists when it files a termination report and meets certain criteria. 
[4] The Colorado Secretary of State’s Office developed a website called TRACER, an acronym for "Transparency in Contribution and Expenditure Reporting," to increase transparency of the campaign finance system to interested third parties, as well as to increase the efficiency of reporting for political candidates, committees, and organizations. See https://perma.cc/NG2H-2WZH.
[5] Neither party has argued to the contrary.
[6] CBF does not argue that the $200.20 was not a contribution and, therefore, we assume the donation was a contribution, as defined in either the Colorado Constitution or the FCPA. Colo. Const. art. XXVIII, § 2(5)(a); § 1-45-103(6), C.R.S. 2015.