The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
February 20, 2025

## 2025COA18

**No. 24CA0128, *Campaign Integrity Watchdog v. Colorado Secretary of State* — Election Law — Fair Campaign Practices Act — Campaign Finance Complaints — Investigation and Enforcement**

The division concludes that the campaign and political finance enforcement mechanism in section 1-45-111.7, C.R.S. 2024, is facially constitutional. The division determines that once the United States District Court for the District of Colorado held that section 9(2)(a) of article XXVIII of the Colorado Constitution was facially unconstitutional in *Holland v. Williams*, 457 F. Supp. 3d 979 (D. Colo. 2018), and the Secretary could no longer act under that constitutional provision, the subsequent enactment of a new enforcement mechanism was necessary under section 9(1)(b) of article XXVIII. The division holds that the plaintiff failed to prove

that the subsequently enacted section 1-45-111.7 violates principles of separation of powers or due process.

Next, the division addresses the district court's dismissal of the plaintiff's complaint filed under section 1-45-111.7 against the defendant political committee.  First, the division reverses that part of the district court's order holding that the committee was not required to file mandatory reports under the applicable campaign and political finance laws.  However, the division affirms the portion of the order dismissing the plaintiff's allegation that the committee failed to maintain an active registered agent.

Court of Appeals No. 24CA0128
City and County of Denver District Court No. 22CV666
Honorable Kandace C. Gerdes, Judge

Campaign Integrity Watchdog LLC, a Colorado corporation,

Plaintiff-Appellant,

v.

Colorado Secretary of State, Jena Griswold, in her official capacity,

Defendant-Appellee.

ORDER AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE TAUBMAN*
Tow and Bernard*, JJ., concur

Announced February 20, 2025

Matthew Arnold, Denver, Colorado, for Plaintiff-Appellant

Philip J. Weiser, Attorney General, Peter G. Baumann, Assistant Solicitor
General, Denver, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1 In this campaign finance law dispute, plaintiff, Campaign Integrity Watchdog LLC (Watchdog), appeals the district court's order affirming the Secretary of State's dismissal of Watchdog's complaint against Alliance for a Safe and Independent Woodmen Hills (Alliance). Because we conclude that the campaign finance enforcement mechanism in section 1-45-111.7, C.R.S. 2024, is constitutional and agree that Alliance had a registered agent, we affirm the order in part. Because we agree with Watchdog's contention that the Secretary erred by dismissing its allegation that Alliance had failed to file reports required by Colorado's campaign finance laws, we reverse the order in part and remand the case for further proceedings.

## I. Background

### A. Watchdog and Alliance's Extensive History of Campaign Finance Disputes

¶ 2 Alliance is a "political committee" under article XXVIII of the Colorado Constitution.[1] Colo. Const. art. XXVII, § 2(12).

---

[1] As the supreme court did in previous litigation between these parties, we will also "treat Alliance as a 'political committee' because that is how it is registered and its status is not at issue in this case." *Campaign Integrity Watchdog v. All. for a Safe & Indep. Woodmen Hills*, 2018 CO 7, ¶ 22, 409 P.3d 357, 361 (*Watchdog I*).

¶ 3      Watchdog is a Colorado limited liability company that frequently pursues private enforcement of campaign and political finance matters.

¶ 4      When Alliance campaigned against a candidate in a local election in 2014, Watchdog filed its first complaint against Alliance with the Secretary of State under article XXVIII, section 9(2)(a), of the Colorado Constitution.  This complaint marked the beginning of a decade-long adversarial relationship between Watchdog and Alliance that has been well documented in prior litigation.  *See generally Campaign Integrity Watchdog v. All. for a Safe & Indep. Woodmen Hills*, 2018 CO 7, 409 P.3d 357 (*Watchdog I*); *All. for a Safe & Indep. Woodmen Hills v. Campaign Integrity Watchdog, LLC*, 2019 CO 76, 450 P.3d 282 (*Watchdog II*).  However, because not all the parties' litigation history is relevant here, we only discuss the pertinent aspects of their prior litigation.

B.    Colorado's Changing Campaign and Political Finance Enforcement Scheme

¶ 5      Article XXVIII of the Colorado Constitution governs campaign and political finance.  Article XXVIII was proposed by a citizens' initiative as "Amendment 27" and adopted by popular vote in 2002.

*Colo. Ethics Watch v. Senate Majority Fund, LLC*, 2012 CO 12, ¶ 17,

269 P.3d 1248, 1253.  In adopting article XXVIII, the electorate

declared

> that large campaign contributions to political
> candidates create the potential for corruption
> and the appearance of corruption; that large
> campaign contributions made to influence
> election outcomes allow wealthy individuals,
> corporations, and special interest groups to
> exercise a disproportionate level of influence
> over the political process; . . . that because of
> the use of early voting in Colorado[,] timely
> notice of independent expenditures is essential
> for informing the electorate; that in recent
> years the advent of significant spending on
> electioneering communications, as defined
> herein, has frustrated the purpose of existing
> campaign finance requirements; that
> independent research has demonstrated that
> the vast majority of televised electioneering
> communications goes beyond issue discussion
> to express electoral advocacy; . . . and that the
> interests of the public are best served by
> limiting campaign contributions, establishing
> campaign spending limits, providing for full
> and timely disclosure of campaign
> contributions, independent expenditures, and
> funding of electioneering communications, *and
> strong enforcement of campaign finance
> requirements*.

Colo. Const. art. XXVIII, § 1 (emphasis added).  Article XXVIII vests

the Secretary with authority to administer and enforce its

provisions, though of course not without limit.  Colo. Const. art.

XXVIII, § 9(1)(b) ("The secretary of state shall . . . [p]romulgate rules . . . as may be necessary to administer and enforce . . . this article."); *Hanlen v. Gessler*, 2014 CO 24, ¶ 35, 333 P.3d 41, 49 ("[T]he Secretary lacks authority to promulgate rules that conflict with statutory provisions.").

¶ 6    The Fair Campaign Practices Act (the Act) also governs campaign and political finance and "gives effect to [article XXVIII's] mandates." *No on EE – A Bad Deal for Colo., Issue Comm. v. Beall*, 2024 COA 79, ¶ 75, 558 P.3d 671, 686 (Schutz, J., dissenting). Like article XXVIII, the Act allows the Secretary to promulgate rules concerning campaign and political finance. *See* § 1-45-111.5(1), C.R.S. 2024; Sec'y of State Rules 1 to 25.2, 8 Code Colo. Regs. 1505-6 (the Rules).

¶ 7    In 2018, the United States District Court for the District of Colorado held section 9(2)(a) of article XXVIII facially unconstitutional. *Holland v. Williams*, 457 F. Supp. 3d 979 (D. Colo. 2018). Section 9(2)(a) allows any person to file a complaint alleging a campaign finance violation and requires that the complaint be referred to an administrative law judge (ALJ) for a hearing and decision. The *Holland* court held that this provision

4

regulated core political speech, and under a strict scrutiny analysis, it determined that the enforcement provisions were not narrowly tailored to serve the state's compelling interest in enforcing Colorado's campaign finance laws. *Holland*, 457 F. Supp. 3d at 989-91. Thus, the court held that allowing any person to file a complaint alleging a campaign finance violation and requiring every complaint to be resolved by an ALJ after a hearing violated the First and Fourteenth Amendments. *See id.* at 998.

¶ 8 The Secretary did not appeal the *Holland* decision to the Tenth Circuit Court of Appeals. As a party to that case, the Secretary was bound by *Holland* and was thereby precluded from acting according to section 9(2)(a) from that point forward.

¶ 9 Following *Holland*, the Secretary has proceeded — as it must — as though section 9(2)(a) is no longer in effect. The Secretary promulgated new emergency rules, which the General Assembly later enacted in large part under section 1-45-111.7. This new campaign finance enforcement scheme replaced section 9(2)(a)'s requirement that campaign finance complaints be automatically referred to an ALJ. Instead, under the new statute, when a campaign finance complaint is filed with the Secretary, the

5

Elections Division conducts an initial review to determine whether to recommend dismissal of the complaint, provide the respondent with an opportunity to cure the alleged violations, or conduct further review. *See* § 1-45-111.7(3). If the Division determines that the complaint was not timely filed; has not specifically identified one or more violations of the article, the Act, or the Rules; or does not assert facts sufficient to support a factual or legal basis for an alleged violation, then the Division files a motion to dismiss with the deputy secretary.[2] § 1-45-111.7(3)(b)(I). If a complaint is not dismissed during either its initial review or by means of the cure proceedings, the Division determines whether to file a complaint with a hearing officer. § 1-45-111.7(5).

---

[2] The Secretary may appoint a deputy secretary pursuant to section 24-21-105, C.R.S. 2024. The Act defines "[d]eputy secretary" as "the deputy secretary of state appointed pursuant to section 24-21-105 or the deputy secretary's designee." § 1-45-111.7(1)(b), C.R.S. 2024. The Rules define "[d]eputy secretary" as "the person appointed by the Secretary of State as the deputy secretary of state pursuant to section 24-21-105, C.R.S., with authority under section 1-45-111.7, C.R.S., or such other person as may be designated by the deputy secretary of state as the deputy secretary's designee under section 1-45-111.7(1)(b), C.R.S." Sec'y of State Rule 1.7, 8 Code Colo. Regs. 1505-6.

¶ 10 Since the enactment of section 111.7, the supreme court has not addressed the constitutionality of section 9(2)(a). *Watchdog II*, ¶ 23 n.3, 450 P.3d at 287 n.3 (noting that *Holland* is not binding on the supreme court and concluding that it "need not address the constitutionality of section 9(2)(a)'s enforcement provision" because even if it were to assume that section 9(2)(a) is constitutional, Watchdog's action against Alliance was time barred). A division of our court also declined to address the constitutionality of section 9(2)(a) in 2020. *Day v. Chase for Colo.*, 2020 COA 84, ¶ 11, 479 P.3d 1, 3 (noting that *Holland* is not binding on Colorado state courts and declining to reach the question of the constitutionality of section 9(2)(a)). Significantly, neither party to this appeal asks us to address the constitutionality of section 9(2)(a). Indeed, Watchdog argues that "this is not the proper forum" to do so, and the Secretary agrees that we need not reach the issue.

C.  The Administrative Proceedings in this Case

¶ 11 In October 2022, Watchdog filed the complaint against Alliance that is at issue in this appeal using the procedures in section 1-45-111.7. Watchdog filed the complaint with the Division and stated it was filing it pursuant to both article XXVIII and the

Act.  Watchdog's complaint alleged that Alliance had failed "to file required reports and statements per [section] 1-45-108[, C.R.S. 2024]."  Watchdog attached a five-page document to its complaint elaborating on its claims for relief.  First, Watchdog alleged that Alliance had failed to file an annual report on May 2, 2022.  Second, Watchdog alleged that Alliance had failed to maintain an active registered agent and, relatedly, had failed to file an amended committee registration.

¶ 12    The Division moved to dismiss Watchdog's complaint pursuant to section 1-45-111.7(3).  Among other things, the Division argued that the complaint was not timely filed.

¶ 13    The deputy secretary dismissed Watchdog's complaint on grounds different from those presented in the Division's motion to dismiss.  Although the deputy secretary found that Watchdog's allegation about Alliance's failure to report in May 2022 was timely, he also found that there was "no legal or factual basis to hold [Alliance] responsible for not filing a report at that time."  The deputy secretary also found that there was "no basis to find that [Alliance] failed to file a required amended registration statement listing a new registered agent."

¶ 14    Under the judicial review provision in section 1-45-111.7(3)(b)(I), Watchdog appealed the deputy secretary's dismissal order to the district court.

### D.    The District Court's Decision

¶ 15    Before the district court, Watchdog argued that section 1-45-111.7 was unconstitutional.  Watchdog also argued that the deputy secretary erred by dismissing its complaint against Alliance.

¶ 16    After a hearing, the district court ruled in favor of the deputy secretary.  First, in conclusory fashion, the court rejected Watchdog's constitutional challenges to section 111.7.  Next, based on a review of the administrative record, the court found that the Secretary had discretion to conclude that Alliance (1) was not required to file a report for the May 2022 timeframe and (2) had a registered agent.  Finally, in affirming the deputy secretary's dismissal of Watchdog's complaint against Alliance, the court concluded that "the Deputy Secretary did not act in an arbitrary or capricious manner."

E.     The Parties' Appellate Arguments in this Case

¶ 17     On appeal, Watchdog challenges the constitutionality of section 1-45-111.7, both on its face and as applied.[3]  It also maintains that the deputy secretary erred by dismissing its complaint against Alliance.  We disagree, except with regard to Watchdog's contention that Alliance failed to file a required report.

II.     Standard of Review

¶ 18     Section 24-4-106, C.R.S. 2024, governs judicial review of this agency action.  *See* § 1-45-117(3)(b)(I) ("The final determination by the deputy secretary on the motion to dismiss constitutes final agency action and is subject to judicial review by a state district court under section 24-4-106.").  We may set aside an agency's action if we conclude that the agency acted contrary to law.  *No on EE*, ¶ 15, 558 P.3d at 675; § 24-4-106(11)(e) (applying the standard of review set forth in section 24-4-106(7) to judicial review of agency action that is directed to the court of appeals); § 24-4-106(7)(b) (listing several bases for a reviewing court to set aside an agency action).

---

[3] Watchdog does not challenge the constitutionality of the Rules.

### III. The Constitutionality of Section 1-45-111.7

#### A. Facial Challenge

¶ 19    Watchdog contends that section 1-45-111.7 "substitutes agency discretion for constitutional mandates, putting the entire statute in conflict with [a]rticle XXVIII." More specifically, Watchdog argues that section 111.7 is unconstitutional because it conflicts with section 9(2)(a) and because it "violates fundamental principles of separation of powers and due process of law."[4]

##### 1. Standard of Review and Principles of Interpretation

¶ 20    Watchdog's facial challenge to section 1-45-111.7 presents a pure question of law, which we review de novo. *See Watchdog I*, ¶ 19, 409 P.3d at 361; *see also Heotis v. Colo. State Bd. of Educ.*, 2019 COA 35, ¶ 16, 457 P.3d 691, 694-95 (citing *Coffman v.*

---

[4] To the extent Watchdog challenges the constitutionality of section 1-45-111.7 on the grounds that it conflicts with article XXVIII, sections 1, 6, 7, 10, 11, or 12, of the Colorado Constitution, we decline to reach these undeveloped assertions. *See, e.g.*, *Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 41 n.12, 490 P.3d 598, 611 n.12, *aff'd*, 2021 CO 56, 489 P.3d 735.

*Williamson*, 2015 CO 35, ¶ 13, 348 P.3d 929, 934).[5]  Because we presume a statute is constitutional, we construe it that way whenever a reasonable and practical construction allows.  *Morris-Schindler, LLC v. City & Cnty. of Denver*, 251 P.3d 1076, 1084 (Colo. App. 2010).

¶ 21     If a statute is susceptible of different interpretations, we adopt the one which comports with constitutional standards.  *People v. Bondurant*, 2012 COA 50, ¶ 13, 296 P.3d 200, 206.

¶ 22     In both facial and as-applied challenges, the challenging party must prove that a statute is unconstitutional beyond a reasonable doubt.  *See Heotis*, ¶ 17, 457 P.3d at 695.

        2.     Section 9(2)(a) of the Article and Section 111.7 of the Act

¶ 23     Although neither party asks us to reach the constitutionality of section 9(2)(a) under the United States Constitution, Watchdog asks us to declare that section 111.7 is unconstitutional under the

---

[5] A party is not required to raise a facial constitutional challenge in agency proceedings to preserve it for judicial review because an agency does not have authority to determine that issue.  *See Horrell v. Dep't of Admin.*, 861 P.2d 1194, 1198 (Colo. 1993); *Cerbo v. Protect Colo. Jobs, Inc.*, 240 P.3d 495, 504 (Colo. App. 2010) (addressing a challenge to Colorado Constitution, article XXVIII, section 2(10)(a)(I)).

Colorado Constitution precisely because section 111.7 conflicts with section 9(2)(a). We are not persuaded.

¶ 24    As a party to the *Holland* decision, the Secretary has been barred from enforcing Colorado's campaign finance laws under section 9(2)(a). Thus, in this case, section 111.7 does not conflict with section 9(2)(a) because section 9(2)(a) cannot be enforced, unless a party other than the Secretary asserts that the Secretary is not bound by the *Holland* court's finding of unconstitutionality, which Watchdog has declined to do. In other words, even though Colorado courts are not bound by *Holland*, the Secretary is and has been prohibited from operating in accordance with section 9(2)(a) since 2018. In the void created by *Holland*, section 9(1)(b) of article XXVIII required the Secretary to create a new enforcement scheme for Colorado's campaign finance laws. (We note in passing that the *Holland* court declined to permanently enjoin the Secretary from enforcing section 9(2)(a) precisely because the Secretary promptly promulgated the Rules detailing a new enforcement scheme.) After the emergency Rules were promulgated, the General Assembly could enact section 111.7 to legislatively implement them.

Accordingly, article XXVIII, the Act, and the Rules now require the Secretary to enforce section 111.7.

¶ 25    Because the Secretary cannot enforce section 9(2)(a), we cannot discern any conflict between that defunct enforcement mechanism and the new enforcement mechanism contained in section 111.7.  Therefore, Watchdog has not succeeded in proving beyond a reasonable doubt that section 111.7 is unconstitutional on its face on the ground that it conflicts with section 9(2)(a).

### 3.    Separation of Powers and Due Process

¶ 26    Watchdog contends, as a matter of first impression, that section 111.7 is unconstitutional on its face because it violates the separation of powers doctrine of the Colorado Constitution, as well as principles of due process.  Indeed, Watchdog contends that section 111.7 meets the "very definition of tyranny."  Again, we disagree.

¶ 27    The Colorado Constitution divides the powers of government among three branches — legislative, executive, and judicial.  Colo. Const. art. III.  The doctrine of separation of powers generally prohibits one branch from exercising powers that the constitution exclusively vests in another branch.  *Crowe v. Tull*, 126 P.3d 196,

205 (Colo. 2006).  However, the separation of powers doctrine "does not require a complete division of authority among the three branches."  *Bondurant*, ¶ 19, 296 P.3d at 207 (quoting *Crowe*, 126 P.3d at 205).  Instead, in a separation of powers analysis, we ask whether one branch has usurped powers vested in another branch.  *Baum v. Indus. Claim Appeals Off.*, 2019 COA 94, ¶ 27, 487 P.3d 1079, 1086.

¶ 28    When, as here, the final agency decision is subject to judicial review, agency adjudicative procedures do not violate separation of powers principles.  *See, e.g., Dee Enters. v. Indus. Claim Appeals Off.*, 89 P.3d 430, 434 (Colo. App. 2003).[6]  We are, in fact, reviewing the Secretary's dismissal of Watchdog's complaint in this very case.

¶ 29    Watchdog further contends that due process requires adjudication of complaints by an impartial decision-maker and that due process requires notice and an opportunity to be heard before a

---

[6] While we note Watchdog's mention of *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), and *Securities & Exchange Commission v. Jarkesy*, 603 U.S. 109 (2024), for the proposition that section 1-45-111.7 is unconstitutional, Watchdog not only fails to develop its argument on these bases but also fails to show how these cases apply to this case brought under Colorado's Administrative Procedure Act, and not the federal Administrative Procedure Act, addressed in those Supreme Court decisions.

"neutral adjudicator." Similar challenges have been raised — and rejected — to the constitutionality of the workers' compensation administrative appellate procedures. *See Sanchez v. Indus. Claim Appeals Off.*, 2017 COA 71, 411 P.3d 245 (rejecting claimant's argument that the Division of Workers' Compensation's use of executive-appointed ALJs and Panels rather than judicial branch officers violated his fundamental right to a fair hearing); *Kilpatrick v. Indus. Claim Appeals Off.*, 2015 COA 30, 356 P.3d 1008; *Youngs v. Indus. Claim Appeals Off.*, 2012 COA 85M, 297 P.3d 964; *Aviado v. Indus. Claim Appeals Off.*, 228 P.3d 177 (Colo. App. 2009); *MGM Supply Co. v. Indus. Claim Appeals Off.*, 62 P.3d 1001 (Colo. App. 2002). We perceive no reason to reject the reasoning of these cases, including *Dee Enterprises*, based on Watchdog's due process challenges to section 111.7.

¶ 30 Accordingly, Watchdog has not succeeded in proving beyond a reasonable doubt that section 111.7 is unconstitutional on its face on the grounds that it violates either principles of separation of powers or due process.

16

## B. As-Applied Challenge

¶ 31 Watchdog contends in one paragraph that section 1-45-111.7 is unconstitutional as applied. To the extent Watchdog's argument relies on "incorporat[ion] by reference [to] arguments from [its] previous briefs," it may not do so under the Colorado Appellate Rules. *See* C.A.R. 28(a) (requirements for an opening brief). Accordingly, because Watchdog fails to develop its as-applied challenge, we decline to address it. *See, e.g.*, *Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 41 n.12, 490 P.3d 598, 611 n.12, *aff'd*, 2021 CO 56, 489 P.3d 735.

## IV. The Deputy Secretary's Dismissal of Watchdog's Complaint

¶ 32 Watchdog contends that the district court erred by affirming the deputy secretary's dismissal of its complaint. It argues that its complaint alleged sufficient facts that Alliance failed to (1) file a mandatory report and (2) maintain an active registered agent. We agree with the former and disagree with the latter.

### A. Standard of Review and Principles of Interpretation

¶ 33 We review questions of constitutional and statutory interpretation de novo. *Gessler v. Colo. Common Cause*, 2014 CO 44, ¶ 7, 327 P.3d 232, 235. We also review an administrative

agency's conclusions of law de novo. *Campaign Integrity Watchdog v. Colo. Republican Comm.*, 2017 COA 126, ¶ 9, 488 P.3d 284, 286.

¶ 34 In construing statutes and citizen initiatives, we attempt to give effect to the General Assembly's and the electorate's intent, respectively. *See Teague v. People*, 2017 CO 66, ¶ 8, 395 P.3d 782, 784 (statute); *People v. Lente*, 2017 CO 74, ¶ 16, 406 P.3d 829, 832 (citizen initiative). We read words and phrases in context, § 2-4-101, C.R.S. 2024, according to their plain and ordinary meanings, *Teague*, ¶ 8, 395 P.3d at 784; *Lente*, ¶ 16, 406 P.3d at 832. If the language is clear, we apply it as written. *Teague*, ¶ 8, 395 P.3d at 784; *Lente*, ¶ 16, 406 P.3d at 832.

### 1. Constitutional Interpretation

¶ 35 In interpreting a constitutional amendment like article XXVIII, we must "give effect to the electorate's intent in enacting the amendment." *Davidson v. Sandstrom*, 83 P.3d 648, 654 (Colo. 2004). In so doing, we must give words their "ordinary and popular meaning in order to ascertain what the voters believed the amendment to mean when they adopted it." *Id.* We also consider constitutional amendments as a whole and, "when possible, adopt an interpretation of the language which harmonizes different

18

constitutional provisions rather than an interpretation [that] would create a conflict between such provisions." *Gessler v. Smith*, 2018 CO 48, ¶ 18, 419 P.3d 964, 969 (quoting *Zaner v. City of Brighton*, 917 P.2d 280, 283 (Colo. 1996)).

¶ 36 When an amendment's language is clear and unambiguous, the amendment must be enforced as written. *Id.* Language is ambiguous when it is reasonably susceptible of multiple interpretations. *Id.* If the language is not ambiguous, "[w]e do not resort to extrinsic modes of statutory construction." *Colo. Ethics Watch v. Clear the Bench Colo.*, 2012 COA 42, ¶ 10, 277 P.3d 931, 933 (quoting *Colo. Ethics Watch v. City & Cnty. of Broomfield*, 203 P.3d 623, 625 (Colo. App. 2009)).

## 2. Statutory Interpretation

¶ 37 "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). We read the statutory scheme as a whole to give "consistent, harmonious, and sensible effect to all parts of the statute." *Salazar v. Indus. Claim Appeals Off.*, 10 P.3d 666, 667

(Colo. App. 2000). We will not adopt a statutory interpretation that leads to an illogical or absurd result or is at odds with the legislative scheme. *Bryant v. Cmty. Choice Credit Union*, 160 P.3d 266, 274 (Colo. App. 2007).

### 3. Regulatory Interpretation

¶ 38    The construction of administrative regulations such as the Rules is guided by the same principles that apply to statutory interpretation. *Gomez v. JP Trucking, Inc.*, 2022 CO 21, ¶ 27, 509 P.3d 429, 436. Consequently, our foremost goal in interpreting a regulation is to give effect to the promulgating body's intent. *Id.* As with a statute, if the language of a regulation is unambiguous, we enforce it as written, giving the words and phrases their common and ordinary meanings. *Id.* In such a situation, we may not rely on other canons of construction. *Id.* The amount of deference a reviewing court affords an agency's interpretation of its regulation depends on whether the regulatory language is ambiguous or unambiguous. *Id.* at ¶¶ 28-30, 509 P.3d at 436-37.

## B. Alliance's Alleged Failure to Comply with Mandatory Reporting Requirements

¶ 39    Watchdog contends that the Secretary "exceeded [her] authority by failing to enforce disclosure requirements mandated by express constitutional, statutory, and regulatory language, which it is powerless to modify or ignore."  We agree.

¶ 40    In its October 2022 complaint filed with the Election Division, Watchdog alleged that Alliance failed to file campaign finance reports in 2022 as required by section 1-45-108.

¶ 41    The Division responded that because it considered Alliance "defunct," it did not assign Alliance a report to file in 2022.  In other words, the Division responded that it did not require Alliance to file a report in 2022.

¶ 42    In granting the Division's motion to dismiss, the deputy secretary concluded that Alliance was not required to file disclosure reports in 2022 because it had been "essentially inactive since the 2014 November election," had not been assigned a report in 2022, and was eligible for administrative termination under the Rules.

¶ 43    The district court held that the deputy secretary did not exceed his authority because it agreed that Alliance was not required to file a report in May 2022.

¶ 44    Article XXVIII, the Act, and the Rules contain registration and reporting requirements for political committees such as Alliance. For example, the Act requires political committees to report "expenditures made, and obligations entered into." *Watchdog I,* ¶ 16, 409 P.3d at 361; § 1-45-108(1)(a)(I). "[T]he requirement to disclose and file reports is unconditionally imposed until a committee is terminated." *Patterson Recall Comm., Inc. v. Patterson,* 209 P.3d 1210, 1217 (Colo. App. 2009). A political committee may be terminated by filing a termination report if, among other things, the committee's TRACER[7] account has a zero balance, indicating that it has no cash or assets on hand and has no outstanding debts, penalties, or obligations. Sec'y of State Rule 12.3.2, 8 Code

---

[7] The Colorado Secretary of State's Office developed a website called TRACER, an acronym for "Transparency in Contribution and Expenditure Reporting," to increase transparency of the campaign finance system to interested third parties and the efficiency of reporting for political candidates, committees, and organizations. *Campaign Integrity Watchdog v. Coloradans for a Better Future,* 2016 COA 56M, ¶ 8 n.4, 378 P.3d 852, 855 n.4.

Colo. Regs. 1505-6. The Rules also provide a mechanism for "[a]dministrative committee terminations" that allows an officer to terminate a committee if the committee "fails to file any required reports for six consecutive reporting periods or 18 months, whichever is shorter, or files 'zero' reports or reports with no activity for the same time period in accordance with the procedures set out in the State Administrative Procedure Act." *Id.* at Rule 12.4.

¶ 45    When Watchdog filed its complaint in October 2022, Alliance had an outstanding penalty, was not eligible for termination under Rule 12.3, and had not been terminated under Rule 12.4.[8]

¶ 46    The Secretary argues that applying the mandatory reporting requirements to Alliance in these circumstances would raise significant constitutional concerns because Colorado must still ensure that its regulation of committees comports with "exacting scrutiny." If we were to adhere to this proposition, though, it would

---

[8] In 2014, an ALJ ordered Alliance to pay $9,650 in penalties based on a complaint filed by Watchdog. *See All. for a Safe & Indep. Woodmen Hills v. Campaign Integrity Watchdog, LLC*, 2019 CO 76, ¶ 8, 450 P.3d 282, 284 (*Watchdog II*). The supreme court noted previously that the Secretary invoiced Alliance for the $9,650 in penalties, "but the Secretary does not appear to have otherwise pursued enforcement of the ALJ's order." *Id.* at ¶ 10, 450 P.3d at 285.

make it difficult, if not impossible, for any political committee to know in advance whether it would be required to file otherwise mandatory reports. More fundamentally, though, the Secretary's constitutional concerns are misplaced because while the Secretary contends that "Alliance qualified for administrative termination," no officer had actually terminated Alliance on these grounds. Because Alliance is not eligible for termination under Rule 12.3 and had not been terminated under Rule 12.4, we find no authority for the Division to sua sponte declare a committee "defunct" and exempt it from mandatory reporting requirements. Under these circumstances, construing the definition of "political committee" to include an organization that (1) has an outstanding penalty; (2) is not eligible for termination under Rule 12.3; and (3) has not been terminated under Rule 12.4 does not raise significant constitutional concerns. This is especially so when the Secretary has a significant interest in ensuring that penalties are paid or determining they cannot be paid.

¶ 47     On remand, while the Secretary must require Alliance to comply with reporting obligations unless and until Alliance is terminated, the Secretary nevertheless retains discretion when

24

determining appropriate penalties, if any, for any unfulfilled obligations.  *See Patterson*, 209 P.3d at 1216.

¶ 48    Because the deputy secretary erred by dismissing this part of Watchdog's complaint, we reverse this portion of the order and remand the case for further proceedings.

C.    Alliance's Alleged Failure to Maintain a Registered Agent

¶ 49    Next, Watchdog contends that the Secretary "arbitrarily and capriciously exempted [Alliance] from established practice requiring committees to maintain current contact information and report changes within ten days, as required by law and regulation."  We disagree.

¶ 50    In its complaint to the Election Division, Watchdog alleged that Alliance had failed to "maintain an active registered agent" as required by section 1-45-108(3) and Rules 9.2.2 and 12.1. Watchdog further alleged that Alliance's registered agent, Ryan Call, had been disbarred; "fled Colorado in 2020"; and "failed to update his address or substitute another natural person as registered agent for the committee" and that Alliance's listed address was "no longer actively monitored."

¶ 51    In its motion to dismiss, the Election Division agreed that Call had been disbarred and had "apparently relocated to Utah in 2019" and conceded its "difficulty" in contacting him.

¶ 52    In granting the Division's motion to dismiss, the deputy secretary concluded that Alliance still had a registered agent as required by the Rules because Call was not required to be a Colorado resident and his disbarment was irrelevant.

¶ 53    The district court affirmed this portion of the deputy secretary's order, concluding that there was insufficient evidence to find that Call was no longer Alliance's registered agent.

¶ 54    Under the Act, a political committee must have "[a] natural person authorized to act as a registered agent."  § 1-45-108(3)(b).  According to the Rules, "[r]egistered agent" means "a natural person or candidate designated to receive mailings, to address concerns and questions regarding a committee, and is responsible for timely filing campaign finance reports."  Sec'y of State Rule 1.28, 8 Code Colo. Regs. 1505-6.

¶ 55    While the Rules state that "[a] committee must have an *active* registered agent at all times," neither the Act nor the Rules define "*active* registered agent."  *Id.* at Rule 9.2.2 (emphasis added).

26

¶ 56   The Rules require that changes to a committee's registered agent must be reported within ten days. *Id.* Relatedly, the Rules require any changes to a committee's registration statement (which includes naming the committee's registered agent) to be reported within ten days. *Id.* at Rule 12.1.

¶ 57   In its complaint, Watchdog's allegations regarding Alliance not having a registered agent were that Call had fled Colorado and had been disbarred. We agree with the district court that these allegations, without more, were insufficient to demonstrate that Alliance did not have a registered agent.

V.   New Contentions Raised During Oral Argument

¶ 58   Finally, we note — but do not address — two significant arguments raised for the first time during oral argument. *McGihon v. Cave*, 2016 COA 78, ¶ 10 n.1, 410 P.3d 647, 651 ("We do not consider arguments that were not raised in the district court[,] [n]or do we consider arguments first asserted in oral argument.") (citations omitted).

¶ 59   First, for the first time during oral argument, the Secretary argued that Alliance is not a political committee. More specifically, the Secretary claimed that "as of 2019 the Secretary had made the

27

determination in a final agency order that the Alliance no longer qualified as a political committee." Not only was this contention not raised until oral argument, which deprived Watchdog of any opportunity to meaningfully respond, but it is also not clear that the record supports it.

¶ 60 Second, for the first time during oral argument Watchdog argued that employees of the Secretary are engaged in the unauthorized practice of law. More specifically, Watchdog claimed that the Secretary was "acting unlawfully" because some of her employees are engaged in the unauthorized practice of law. Again, we do not address arguments raised for the first time during oral argument. *See id.*

### VI.   Disposition

¶ 61 The district court's order is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

JUDGE TOW and JUDGE BERNARD concur.